POLEN, J.
This is a negligence action against the School Board of Broward County (School Board), arising from serious injuries that Glenice Petit-Dos (Petit-Dos) sustained when, upon exiting the school bus, a pickup truck struck her as she sought to cross the street. At the time of the collision, Petit-Dos was an eighteen year old, deaf student. Petit-Dos is appealing the final judgment finding the School Board twenty percent negligent. We affirm, concluding that the trial court properly listed Antwan Snell on the verdict form, and that the erroneous evidentiary ruling at trial was a harmless error.
The first issue is whether the pick-up truck driver should have been excluded from the verdict form because he committed an intentional tort. At around 3 p.m., Jackson, the bus driver, stopped on the two lane residential street, across from Petit-Dos’s house. The residential street had a speed limit of 25 miles per hour. Jackson had activated the bus’s flashing lights and extended the stop sign on its left side. Petit-Dos exited and walked across the front of the bus to cross the street to her house. Jackson then heard a pick-up truck speeding up the street and began banging on the window and honking her horn to alert Petit-Dos. Moments later, the truck struck Petit-Dos, knocking her to the ground. An expert testified that the pick-up truck was traveling between 42 to 60 miles per hour.
*1024 Antwan Snell was the driver of the pickup truck. Snell was fleeing police, after an officer approached his parked truck to investigate a drug sale. In his deposition, which was read into record at trial, Snell stated that he never intended to hurt anyone and that he did not realize he struck anyone. Pleading no contest, Snell received a five year prison sentence for, inter alia, reckless driving.
Petit-Dos sued the School Board under the following theories of liability: (1) Jackson negligently operated the school bus, (2) School Board negligently trained Jackson, and (3) School Board negligently supervised Jackson. Apportioning comparative negligence, the jury found School Board 20%, Snell 70%, and Petit-Dos 10% at fault.
We review de novo the legal question of whether certain conduct qualifies as negligence or intentional tort. See, e.g., Boza v. Carter, 993 So.2d 561, 562 (Fla. 1st DCA 2008). The comparative fault statute, section 768.81, Florida Statutes, provides for apportionment of fault in negligence cases. However, the statute contains an exception “to any action based upon an intentional tort.” § 768.81(4)(b), Fla. Stat. Our supreme court “has defined an intentional tort as one in which the actor exhibits a deliberate intent to injure or engages in conduct which is substantially certain to result in injury or death.” D’Amario v. Ford Motor Co., 806 So.2d 424, 438 (Fla.2002).
Citing Spivey v. Battaglia, 258 So.2d 815, 817 (Fla.1972), the D Amaño court distinguished negligence from an intentional tort as follows:
Where a reasonable man would believe that a particular result was substantially certain to follow, he will be held in the eyes of the law as though he had intended it.... However, the knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent. Thus, the distinction between intent and negligence boils down to a matter of degree. Apparently the line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable man would avoid (negligence), and become a substantial certainty.
Id. (concluding that driving while intoxicated is not an intentional tort) (quoting Spivey) (omission in original). This substantial-certainty standard is an objective inquiry, decided as a matter of law. See Travelers Indemnity Co. v. PCR Inc., 889 So.2d 779, 788 (Fla.2004); Boza, 993 So.2d 561, 562.
In Merrill Crossings Associates v. McDonald, 705 So.2d 560, 560 (Fla.1997), the plaintiff was shot by an unknown assailant in the Wal-Mart parking lot. Plaintiff sued Wal-Mart and the owner of the shopping center, “alleging failure to maintain reasonable security measures.” Id. at 560. The trial court excluded the unknown assailant from the verdict form, and Wal-Mart appealed. Id. Approving the trial court, the supreme court reasoned that Wal-Mart is a “negligent tortfeasor whose acts or omissions give rise to or permit an intentional tortfeasor’s actions.” Id. at 562.
The intentional tort exception to the comparative fault statutes promotes “a public policy that negligent tortfeasors ... should not be permitted to reduce their liability by shifting it to another tortfeasor whose intentional criminal conduct was a foreseeable result of their negligence.” Id. at 562-63 (“Thus, it would be irrational to allow a party who negligently fails to provide reasonable security measures to reduce its liability because there is an intervening intentional tort, where the intervening intentional tort is exactly what *1025 the security measures are supposed to protect against”) There, the shooting by the unknown assailant met the first definition of an intentional tortfeasor — conduct exhibiting a deliberate intent to injure. Thus, section 768.81 did not apply and the intentional tortfeasor was properly excluded from the verdict form. Id. at 563.
Here, the issue is whether Snell’s conduct meets the second definition of an intentional tort: was his conduct substantially certain to result in injury to Petit-Dos. On these facts, we are unable to conclude that Snell’s conduct crossed the line from being negligent, or even grossly negligent, to one of an intentional tort. For example, there is no second-hand evidence showing that despite seeing children crossing the street, Snell sped by the school bus. Although this is a close case, the instant facts fall short of showing that injury to Petit-Dos was substantially certain to follow, so that even if Snell did not aim to harm her, we would consider his conduct as though he had intended to harm Petit-Dos. Rather, we hold that the known danger of injuring Petit-Dos was “only a foreseeable risk which a reasonable man would avoid.” D’Amario, 806 So.2d at 438.
The second issue on appeal concerns the trial court excluding certain testimony by Jackson and excluding Jackson’s deposition from evidence. Four times, Petit-Dos unsuccessfully attempted to obtain a favorable ruling on admissibility of this evidence. Examining Jackson about her actions on the day of the collision, Petit-Dos asked:
Do you take some responsibility for this accident, the accident, the harm to Pet-it-Dos?
School Board: Judge, I would object. It’s for the jury to decide.
[[Image here]]
The Court: On what grounds?
School Board: That it is a question for the jury to decide.
[[Image here]]
The Court: Objection sustained. Move on.
On cross-examination, School Board established that Jackson had not been reprimanded by School Board for the incident because she did not do anything wrong.
After Jackson was discharged as a witness, Petih-Dos proferred the following deposition testimony: “Well, do you take some responsibility for this action, for this accident? Answer, do I? Question, yes. Answer, in my heart, yes, I feel like I hurt her a lot. Okay. And why is that? Answer, from this incident.” Petit-Dos claimed that this deposition testimony was a vicarious admission of Jackson’s employer, School Board, and that “the question was regarding a matter within the course and scope of her employment,” citing the Florida Evidence Code. School Board argued that Florida Rule of Civil Procedure 1.330(a)(2) allows the use of a deposition only of an officer of a corporation, and Petit-Dos was not School Board’s corporate representative. Without providing a basis for its ruling, the trial court summarily sustained School Board’s objection to admission of Jackson’s deposition into evidence.
“While the standard of review for admissibility of evidence is abuse of discretion, a trial court’s discretion is limited by the rules and statutes governing the admission.” Castaneda v. Redlands Christian Migrant Ass’n, 884 So.2d 1087, 1090 (Fla. 4th DCA 2004). First, Petit-Dos contends that the trial court erred in sustaining School Board’s objection to her direct examination of Jackson on whether she takes responsibility for the accident.
*1026 “Generally, a lay witness may not testify in terms of an inference or opinion, because it usurps the function of the jury.” Fino v. Nodine, 646 So.2d 746, 748 (Fla. 4th DCA 1994). However, section 90.701, Florida Statutes, provides that a lay witness may testify in the form of inference and opinion when:
(1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he or she has perceived to the trier of fact without testifying in terms of inferences or opinions and the witness’s use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and
(2) The opinions and inferences do not require a special knowledge, skill, experience, or training.
§ 90.701, Fla. Stat.
In the instant case, contrary to the Evidence Rules, the trial court sustained School Board’s objection that the question of whether Jackson takes responsibility for the accident was “for the jury to decide.” Cf. Castaneda, 884 So.2d at 1093 (“Failure to follow the Rules [of Civil Procedure] constitutes an error of law, not an abuse of discretion.”). According to section 90.701, Florida Statutes, Jackson should have been allowed to offer her opinion on whether she takes responsibility for the accident because she likely could not otherwise readily and accurately testify to what she perceived, and her opinion did not require special knowledge or experience.
School Board claims that Jackson’s answer that she feels like she hurt Petit-Dos a lot would have told the jury how to decide the case and would not have helped them determine what had occurred. On the contrary, the question did not seek Jackson’s opinion on whether School Board negligently trained or supervised Jackson, or whether Jackson negligently operated the bus — all of which would be conclusions dictating to the jury how to decide the case. Instead, Jackson’s answer would have revealed her sense of moral responsibility for what happened to Petit-Dos, and did not relate to the central legal issue in the case.
Second, Petit-Dos argues that the trial court erred in excluding from evidence Jackson’s deposition testimony on whether she took responsibility for the accident. Petit-Dos insists that the excerpt from her deposition was a vicarious admission of a party’s employee, and thus, should have been admitted into evidence.
Rule 1.330, Florida Rules of Civil Procedure, allows for the use of a deposition against a party:
so far as admissible under the rules of evidence applied as though the witness were then present and testifying in accordance with any of the following provisions: (1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness or for any purpose permitted by the Florida Evidence Code.
R. 1.330(a)(1), Fla. R. Civ. P. (emphasis added). Found in the Florida Evidence Code, section 90.803, Florida Statutes, provides in relevant part:
the following are not inadmissible as evidence, even though the declarant is available as a witness:
* * *
(18) Admissions. — A statement that is offered against a party and is:
[[Image here]]
(d) A statement by the party’s agent or servant concerning a matter within the scope of the agency or employment *1027 thereof, made during the existence of the relationship;
§ 90.803(18)(d), Fla. Stat.
In Castaneda, 884 So.2d at 1089, where a minor’s mother sued a daycare center for minor’s personal injuries, this court considered the trial court disallowing “the plaintiff to read excerpts of the depositions of employees of the daycare center, which were presented as admissions.” There, “Castaneda’s attorney took depositions of the [daycare] employees who were present at the daycare center on the date of the accident.” Id. Although the issue there was whether the offering party had to first lay the predicate by showing unavailability of the employee witnesses, this court analyzed the procedure for admitting depositions of opposing party’s employees on the ground that the depositions were admissions. Id.
“ ‘Florida courts have consistently admitted into evidence statements by employees concerning matters arising from the course of their employment under the doctrine of admissions.’ ” Id. at 1091 (quoting Hunt v. Seaboard Coast Line R. Co., 327 So.2d 193, 195-96 (Fla.1976)). Accordingly, the Castaneda court concluded that “[u]nder this definition, the statements of the [daycare] employees are admissions within the meaning of section 90.803(18)(d) as the statements concerned matters regarding this specific accident arising from their employment and were made while the deponents were still employees of [the daycare].” Id.
Here, Jackson was still employed as a bus driver for School Board, and her statements regarding the collision that injured Petit-Dos meet the definition of an admission against her employer. Similar to daycare employees in Castaneda giving statements about the minor’s accident at the daycare, Jackson’s statements that she felt she hurt Petit-Dos a lot, do concern matters arising from the course of her employment in that she brought Petit-Dos to the bus stop where the collision occurred and was an eyewitness to the collision. School Board’s attempt to limit the doctrine of admissions to Jackson’s comments on “the mechanics of Jackson’s driving of the bus, or the rules and regulations governing her position,” is not well-taken, as it is contrary to the case law.
Nevertheless, we conclude that the errors were harmless because the jury did apportion some liability to School Board. See generally Pascale v. Federal Exp. Corp., 656 So.2d 1351, 1353 (Fla. 4th DCA 1995) (defining the harmless error test). The direct examination question and Jackson’s excluded answer did not go to the issue of the amount of School Board’s negligence and thus, the error was not harmful. Lastly, we affirm, without further discussing, the final issue on appeal.
WARNER and MAY, JJ., concur.