DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**R.J. REYNOLDS TOBACCO COMPANY,**
Appellant,

v.

**JOAN SCHOEFF,** as Personal Representative of the Estate of JAMES
EDWARD SCHOEFF, deceased,
Appellee.

No. 4D13-1765

[November 4, 2015]

Appeal and cross-appeal from the Circuit Court for the Seventeenth
Judicial Circuit, Broward County; Jack B. Tuter, Judge; L.T. Case No.
08-022608 (19).

Gordon James, III, and Eric L. Lundt of Sedgwick LLP, Fort Lauderdale,
and Gregory G. Katsas, of Jones Day, Washington, D.C., for appellant.

John S. Mills and Courtney Brewer of The Mills Firm, P.A., Tallahassee,
Alex Alvarez of The Alvarez Law Firm, Coral Gables, and Gary M. Paige of
Gordon & Doner, Davie, for appellee.

DAMOORGIAN, J.

R.J. Reynolds Tobacco Company ("RJR") appeals the final judgment
entered in favor of Joan Schoeff Spolzino as Representative of the estate of
her deceased husband, James Schoeff ("Plaintiff"). RJR raises four issues
on appeal. First, it contends that the trial court erred in denying its motion
for a directed verdict because Plaintiff failed to prove addiction causation.
Second, it asserts that certain comments made by Plaintiff's counsel
during closing necessitate a new trial. Third, it argues that the court erred
in denying its motion to remit the jury's compensatory and punitive
damages awards. Fourth, it argues that the court's application of the
*Engle*[1] findings violated its due process rights. Plaintiff cross-appeals,
arguing that the court erroneously reduced the jury's compensatory
damages award based on Mr. Schoeff's comparative fault. We reverse and
remand for remittitur of the punitive portion of the judgment, and affirm

---

[1]  *Engle v. Liggett Group, Inc.,* 945 So. 2d 1246 (Fla. 2006).

in all other respects.

**Background**

a) Pleadings

The instant case is an *Engle* progeny case. *See Engle v. Liggett Group, Inc.*, 945 So. 2d 1246 (Fla. 2006). Plaintiff filed suit against RJR[2] asserting membership in the *Engle* class because her husband died from lung cancer "caused by his addiction to cigarettes." In her suit, Plaintiff alleged causes of action for strict liability, fraud by concealment, conspiracy to commit fraud by concealment, negligence, and gross negligence. She also admitted that Mr. Schoeff shared some fault for his smoking-related injuries and represented that she would "seek apportionment of fault, pursuant to the principles of comparative fault, on the counts for negligence and strict liability; however not with respect to the counts constituting intentional torts as pled in this action."

b) The Trial

The case proceeded to trial in two phases in the manner we approved in *R.J. Reynolds Tobacco Co. v. Brown*, 70 So. 3d 707, 714 (Fla. 4th DCA 2011). In the first phase, the jury was asked to: 1) determine whether Mr. Schoeff was a member of the *Engle* class; 2) if so, whether RJR's conduct was the legal cause of his death; and 3) determine damages. The jury was also asked to determine whether Plaintiff was entitled to punitive damages if it found against RJR on Plaintiff's claims for fraudulent concealment or conspiracy to fraudulently conceal.

After considering the evidence, the jury returned its verdict, finding that Mr. Schoeff was addicted to nicotine, his addiction was a legal cause of his lung cancer and death; and that the negligence of RJR as well as the defective and unreasonably dangerous cigarettes manufactured by RJR were a legal cause of Mr. Schoeff's lung cancer and death. It allocated Mr. Schoeff's comparative fault for his injuries at 25%. Additionally, the jury found that Mr. Schoeff detrimentally relied on statements made by RJR which concealed or omitted material information, and that such reliance was a legal cause of his cancer and death. Based on these findings, the jury awarded Plaintiff $10.5 million in compensatory damages and found that punitive damages were warranted.

---

[2] Plaintiff also sued several other tobacco companies, but all except RJR were dismissed before trial.

The second phase of the trial concerned the proper amount of punitive damages. During closing arguments in this phase, Plaintiff's counsel asked the jury to award Plaintiff $25 million in punitive damages and no more. Specifically, counsel stated: "you may think that's too low, but we urge you not to go above that. Please do not go above 25 million. Do not. She doesn't want that. Do not go above that." Despite Plaintiff's urging, the jury returned a verdict assessing $30 million in punitive damages against RJR.

c) <u>Post-Trial Motions and Rulings</u>

Following the trial, RJR filed a motion asking the court to reduce the compensatory damages award to reflect the comparative fault assigned to Mr. Schoeff by the jury. Plaintiff filed a response in opposition arguing that the comparative fault statute should not apply since the jury found RJR committed the intentional tort of fraudulent concealment. Additionally, RJR moved for a new trial on evidentiary grounds. In the alternative, RJR moved for remittitur of both the compensatory and punitive damages awards, arguing that they were both excessive and not supported by the evidence.

Considering the above pleadings, the trial court granted RJR's motion to enter judgment consistent with the jury's finding on comparative fault, denied RJR's motion for a new trial, and denied RJR's motion to remit the compensatory and punitive damages awards. In granting RJR's motion to reduce the jury's compensatory award by Mr. Schoeff's comparative fault, the court ruled that Plaintiff waived her argument regarding comparative fault based on representations counsel made to the jury. Alternatively, the court ruled that even if Plaintiff had not waived her argument, the intentional tort exception to the comparative fault statute would not apply as Plaintiff's suit was a products liability suit at its core. In denying RJR's motion to remit the punitive damages award, the court recognized that there was no logical basis for the jury to award a larger amount than Plaintiff requested, but found that the jury's award was "NOT infected by bias, prejudice, passion or any other sentiment against Defendant."

In accordance with its above rulings, the court entered final judgment awarding Plaintiff $7,875,000 in compensatory damages and $30 million in punitive damages, for a total of $37,875,000. This appeal follows.

**Analysis**

We affirm the court's denial of RJR's motion for directed verdict, motion for a new trial, and motion to remit the jury's compensatory damages

award without further comment. We also affirm the court's application of the *Engle* findings pursuant to our decision in *Brown* and our supreme court's decision in *Philip Morris USA, Inc. v. Douglas,* 110 So. 3d 419 (Fla. 2013). We write only to address the punitive damages award and the court's reduction of the compensatory award based on Mr. Schoeff's comparative fault.

### a) Punitive Damages

RJR argues that the court erred in refusing to remit the $30 million punitive damages award because it is unconstitutionally excessive. This Court reviews a trial court's order denying a motion for remittitur for an abuse of discretion. *City of Hollywood v. Hogan*, 986 So. 2d 634, 647 (Fla. 4th DCA 2008). However, the constitutionality of a punitive damages award is reviewed de novo. *Lorillard Tobacco Co. v. Alexander*, 123 So. 3d 67, 81 (Fla. 3d DCA 2013).

Pursuant to Florida's remittitur and additur statute, the trial court has the responsibility to review the amount of an award and determine if it is excessive or inadequate "in light of the facts and circumstances which were presented to the trier of fact." § 768.74(1), Fla. Stat. (2012). "If the court finds that the amount awarded is excessive or inadequate, it shall order a remittitur or additur, as the case may be." § 768.74(2), Fla. Stat. In making its determination, the trial court is guided by the following statutory considerations:

(a) Whether the amount awarded is indicative of prejudice, passion, or corruption on the part of the trier of fact;

(b) Whether it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable;

(c) Whether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation and conjecture;

(d) Whether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered; and

(e) Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.

4

§ 768.74(5), Fla. Stat.

"[T]he purpose of punitive damages is not to further compensate the plaintiff, but to punish the defendant for its wrongful conduct and to deter similar misconduct by it and other actors in the future." *Owens–Corning Fiberglas Corp. v. Ballard,* 749 So. 2d 483, 486 (Fla. 1999). The amount of punitive damages to be awarded is an issue left to the discretion of the jury. *Id.* However, the imposition of a punitive damage award is subject to limitations.

Under Florida law, the courts evaluate the extent of a punitive damages award by considering whether: 1) the amount is so excessive as to be "out of all reasonable proportion" to the conduct; 2) the award bears some relationship to ability to pay; and 3) there is a reasonable relationship between compensatory and punitive damages. *See R.J. Reynolds Tobacco Co. v. Townsend*, 90 So. 3d 307, 313 (Fla. 1st DCA 2012). As for whether any given punitive damages award is so excessive as to violate due process, the United States Supreme Court has identified three guideposts to consider: 1) the degree of reprehensibility of defendant's conduct; 2) the ratio between compensatory and punitive damages; and 3) civil and criminal penalties for the same conduct. *Id.* (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996)). "Although there is no bright-line standard, the Florida Supreme Court observed in *Engle* that '[s]ingle-digit [ratios] are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution.'" *Id.* at 314 (quoting *Engle,* 945 So. 2d at 1264–65 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 425 (2003))).

At this juncture in the trajectory of Florida *Engle* cases, the appellate cases with the highest affirmed punitive damages awards are *R.J. Reynolds Tobacco Co. v. Martin,* 53 So. 3d 1060 (Fla. 1st DCA 2010), and *Lorillard Tobacco Co. v. Alexander*, 123 So. 3d 67 (Fla. 3d DCA 2013). Applying the above outlined principles, the *Martin* court upheld a $25 million punitive damages award that bore a 7.58 to 1 ratio to the $3.3 million compensatory damages award based on the tobacco company's wanton and reprehensible behavior. 53 So. 3d at 1072–73. On the same considerations, the *Alexander* court upheld a $25 million punitive damages award that bore a 2.5 to 1 ratio to a remitted compensatory damages award of $10 million. 123 So. 3d at 81–82. This Court followed suit in *R.J. Reynolds Tobacco Co. v. Buonomo*, 138 So. 3d 1049, 1049, 1052 (Fla. 4th DCA 2013), affirming that the jury's initial $25 million punitive damages award (which was subsequently remitted to $15,705,000) as compared to a $5,235,000 compensatory damages award was not so excessive as to violate due process.

On the other hand, in *R.J. Reynolds Tobacco Co. v. Townsend*, 90 So. 3d 307, 314 (Fla. 1st DCA 2012), the court held that a $40.8 million punitive damages award was excessive in the face of a $10.8 million compensatory damages award, even though the evidence of the tobacco company's bad conduct was the same as that presented in *Martin* and the ratio between the punitive and compensatory awards was less than that upheld in *Martin.* In doing so, it reasoned that "the $10.8 million compensatory damage award—which is substantial by any measure— justifies a lower ratio than 3.7 to 1." *Id.* at 315–16.

The award in Plaintiff's case ($30 million punitive award in light of $10.5 million compensatory award, a 2.9 to 1 ratio) falls somewhere between the award affirmed in *Alexander* ($25 million punitive award in light of $10 million compensatory award) and the award reversed in *Townsend* ($40.8 million punitive award in light of $10.8 million compensatory award). In light of the $10.5 million compensatory damages award, we hold that the $30 million punitive damages award falls on the excessive side of the spectrum.

Additionally, even if the award was not unconstitutionally excessive, remittitur should have been granted. Plaintiff's counsel begged the jury not to award her more than $25 million in punitive damages and the trial court found that there was "no logical or sound reason for the jury to have exceeded the award sought by counsel for Plaintiff." This finding in and of itself compels remittitur. *See* § 768.74(5)(e), Fla. Stat. (one of the factors for consideration on motion for remittitur is whether the award "could be adduced in a logical manner by reasonable persons").

Accordingly, we remand to the trial court with directions to grant RJR's motion for remittitur, and, if RJR does not agree with the remitted amount, to hold a new trial on punitive damages. *See R.J. Reynolds Tobacco Co. v. Webb*, 130 So. 3d 262, 264 (Fla. 1st DCA 2013) (holding that proper remedy when trial court improperly denied tobacco company's motion to remit was to remand for remittitur, or, if tobacco company did not agree with the remitted amount, to hold a new trial on damages).

*b) Comparative Fault*

Plaintiff cross-appeals the trial court's order reducing the compensatory damages award based on the jury's finding that Mr. Schoeff was 25% at fault for his lung cancer. She asserts that because the jury found RJR committed the intentional tort of fraudulent concealment, section 768.81(4), Florida Statutes, barred application of Mr. Schoeff's

6

comparative fault to reduce damages. RJR counters that the trial court correctly found Plaintiff invited the reduction and further, the substance of Plaintiff's action was a products liability suit. Thus, RJR maintains that Plaintiff's damages were subject to reduction under the comparative fault statute. We agree with RJR.

Sections 768.81(2) and (4), Florida Statutes (1994)[3], provide, in pertinent part, that in "negligence cases," "any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as economic and noneconomic damages for an injury attributable to the claimant's contributory fault, but does not bar recovery." "Negligence cases" include, but are not limited to, "civil actions for damages based upon a theory of negligence, strict liability, products liability, professional malpractice whether couched in terms of contract or tort, or breach of warranty and like theories." § 768.81(4)(a), Fla. Stat. "In determining whether a case falls within the term 'negligence cases,' the court shall look to the substance of the action and not the conclusory terms used by the parties." § 768.81(4)(a), Fla. Stat. Section 768.81 does not permit the reduction of compensatory damages by plaintiff's comparative fault where the suit is based upon an intentional tort ("the intentional tort exception"). *See* § 768.81(4)(b) Fla. Stat.

### a) Waiver

As outlined above, in granting RJR's motion to reduce the jury's compensatory damages award by Mr. Schoeff's comparative fault, the trial court found that Plaintiff waived any argument regarding the intentional tort exception. "[A] trial court's finding of waiver is reviewed for abuse of discretion." *R.J. Reynolds Tobacco Co. v. Hiott*, 129 So. 3d 473, 479 (Fla. 1st DCA 2014).

The case with the most in depth discussion on waiver is *Hiott.* 129 So. 3d at 479–82. There, a tobacco plaintiff argued that the trial court improperly reduced her compensatory damages based on the smoker's comparative fault because she prevailed on her intentional tort claims against the tobacco companies. *Id.* at 479. The First DCA disagreed,

---

[3] The parties dispute which version of the statute governs: Plaintiff asserts it is the version as amended in 1992 while RJR contends it is the version as amended in 2011. Courts generally have held that the applicable version of section 768.81 is the version in effect at the time the cause of action accrued. *See Basel v. McFarland & Sons, Inc.*, 815 So. 2d 687, 691-96 (Fla. 5th DCA 2002). Plaintiff's cause of action accrued in 1994, when Mr. Schoeff was diagnosed with lung cancer. *See, e.g., Carter v. Brown & Williamson Tobacco Corp.*, 778 So. 2d 932, 934 (Fla. 2000). As such, the 1994 version of the statute governs.

holding that under the facts of the case, the trial court did not abuse its discretion in finding that the plaintiff invited the error by misleading the jury. *Id.* at 481. Specifically, the plaintiff "encouraged the jury, from *voir dire* through closing argument, that she accepted that her deceased husband was partially at fault for his smoking-related illness and death. Thus, she expected the jury to allocate some fault to her late husband." *Id.* Indeed, the jury was instructed that it "should not make any reduction because of the fault you charge to [the smoker]. The Court will enter a judgment based on your verdict and **will reduce the total amount of damages by the percentage of fault which you charge to [the smoker]**." *Id.* However, the plaintiff "failed to inform the jury that she intended to reserve her right to assert the inapplicability of comparative fault to any of her claims." *Id.* at 480-81. Under the circumstances, the court concluded that the jury was likely misled to believe that its award would be reduced by its determination of comparative fault. *Id.* at 481-82. Thus, the jury may have reached a different verdict on damages had it known that the tobacco company would bear the entire amount. *See id.; see also Buonomo*, 138 So. 3d at 1053 n.3 (holding, without discussion, that any error in the reduction of a tobacco plaintiff's compensatory damages award was invited and/or waived by the plaintiff).

In *R.J. Reynolds Tobacco Co. v. Sury*, 118 So. 3d 849, 851 (Fla. 1st DCA 2013), the same court reached the opposite conclusion under slightly different facts. There, the First DCA held that the trial court did not abuse its discretion in finding a tobacco plaintiff did not waive application of the intentional tort exception. *Id.* The court based its conclusion on the facts that: 1) the plaintiff's "complaint clearly and specifically sought 'potential apportionment of fault and damages on all counts other than those alleging intentional torts;'" 2) the plaintiff "never argued to the jury or the court that the damages for his father's terminal illness should be reduced by his portion of fault;" and 3) "the defendants agreed to the verdict form which listed each cause of action, including the intentional torts, and requested the jury to indicate whether the defendants had committed each individual tort or not." *Id.*

Plaintiff argues that this particular case is factually analogous to *Sury* rather than *Hiott*, and thus the court erred when it found that Plaintiff waived her intentional tort exception argument. As it pertains to Plaintiff's position on comparative fault, the record reflects the following:

A. <u>Pleadings</u>

Plaintiff's complaint stated that: "Plaintiff will seek apportionment of fault, pursuant to the principles of comparative fault, on the counts for

8

negligence and strict liability; however not with respect to the counts constituting intentional torts as pled in this action."

B. Plaintiff's Representations to the Jury

During voir dire, Plaintiff's counsel told prospective jurors: "from the very beginning in this case, when this case was filed, the plaintiff in this case, Miss Schoeff, on behalf of her husband who's passed, has accepted partial responsibility, okay, in combination with the acts of the defendants." During opening statements, Plaintiff's counsel stated: "Then you're going to decide what the percentage of responsibility for RJR – if you find for us on the counts of negligence and strict liability, then we're going to apportion responsibility, what percentage of fault is Mr. Schoeff responsible for and what percentage of fault is R.J. Reynolds responsible for." Likewise, Mr. Schoeff's responsibility was a reoccurring theme in Plaintiff's closing — counsel referred to the fact that Mr. Schoeff bore responsibility for his actions no less than ten times. However, at one point, counsel did explain that although Plaintiff accepted some responsibility for the negligence and strict liability claims, the intentional torts were "a different ball game." Finally, counsel argued that due to RJR's lies and deceptive marketing strategies, the jury should not find Mr. Schoeff responsible at all for his decision to smoke until at least 1967, when the first Surgeon General's report on the harms of smoking came out. Counsel equated this number to 40%. For the remaining 60% of Mr. Schoeff's smoking life, counsel urged the jury to find Mr. Schoeff 25% responsible, averaging out to a total of 15% responsibility allocated to Mr. Schoeff and 85% to RJR.

C. Jury Instructions

Before retiring, the court instructed the jury as follows:

> If your verdict is for R.J. Reynolds on plaintiff's negligence and product defect claims, then you will not consider the issue of comparative fault. If, however, your verdict is for plaintiff on her negligence or product defect claims, then you will consider the issue of comparative fault.

> In that event, you must determine and write on the verdict what percentage of fault James Schoeff's death you find chargeable to R.J. Reynolds and to James Schoeff.

> Joan Schoeff, on behalf of the estate of James Schoeff, has admitted that, on the claims for negligence and defective

9

product, James Schoeff bears some percentage of fault and that his fault was a proximate cause, in combination with the acts of omission of defendants, of his smoking–related lung cancer and death.

In the instruction regarding the jury's determination of compensatory damages, the court informed the jury: "In determining the total amount of any damages sustained by Joan Schoeff, **you should not make any reductions because of the responsibility of James Schoeff**."

These facts share characteristics with both *Sury* (no waiver) and *Hiott* (waiver). Like in *Sury,* Plaintiff's complaint specifically stated that it was seeking apportionment of fault for only its negligence claims and not its intentional tort claims. Also like in *Sury,* the verdict form listed each cause of action individually. However, these similarities do not compel the same conclusion reached in *Sury* because, unlike in *Sury* and similar to *Hiott*, Plaintiff's counsel argued to the jury that the damages for Mr. Schoeff's terminal illness should be reduced by his portion of the fault and the jury was instructed not to make any reductions based on Mr. Schoeff's comparative fault. Although Plaintiff's counsel noted that Plaintiff was accepting some responsibility for only her negligence claims and not her intentional tort claims, counsel also argued that the jury should consider this concession when coming up with its figure for comparative fault and should find Mr. Schoeff less at fault due to RJR's fraudulent concealment of certain facts. Based on the overall theme of Plaintiff's representations to the jury, a reasonable jury would not possibly understand that its comparative fault determination was going to have no effect whatsoever on its compensatory damages award. *See Philip Morris USA, Inc. v. Green*, 40 Fla. L. Weekly D1809 (Fla. 5th DCA July 31, 2015) (rejecting tobacco plaintiff's argument that she did not waive her argument concerning the intentional tort exception because counsel gave "explicit, tactical directions encouraging the jury to find [plaintiff] partially at fault and to determine what percentage of fault was to be shared by each of the parties").

Under such circumstances, reversing would unfairly allow the Plaintiff to "have it both ways." It would be inequitable to allow Plaintiff to use "the admission that [Mr. Schoeff] was partly at fault as a tactic to secure an advantage with the jury throughout the trial" and then completely avoid comparative fault after the verdict. *Hiott*, 129 So. 3d at 481; *see also Green*, 40 Fla L. Weekly D1809. Accordingly, we hold that the trial court did not abuse its discretion when it found that Plaintiff waived her intentional tort exception argument.

10

### b. Applicability of the Comparative Fault Intentional Tort Exception to this Suit

Although we are affirming the trial court's reduction of the compensatory damages award by Mr. Schoeff's comparative fault based on its finding that Plaintiff waived her argument regarding the application of the intentional tort exception, we also write to address the trial court's alternative finding that the intentional tort exception does not apply to Plaintiff's case.

As outlined above, Florida's comparative fault statute provides: "In determining whether a case falls within the term 'negligence cases,' the court shall look to the substance of the action and not the conclusory terms used by the parties." § 768.81(4)(a), Fla. Stat. The seminal case addressing whether an action is founded in negligence or intentional tort is *Merrill Crossings Associates v. McDonald*, 705 So. 2d 560 (Fla. 1997). There, after being shot in the parking lot, a customer sued Wal-Mart and the owner of the shopping center, alleging negligent failure to maintain reasonable security. *Id.* at 561. The defendants sought to have the shooter placed on the verdict form for purposes of assessing comparative fault and the trial court refused. *Id.* On appeal, the supreme court affirmed this ruling, concluding the substance of the action was "that [the Wal-Mart customer] was the victim of an intentional tort." *Id.* at 563. The court noted that the statute did not say actions "including an intentional tort," rather it said "based upon an intentional tort." *Id.* The court reasoned that this implies "'the necessity to inquire whether the entire action against or involving multiple parties is founded or constructed on an intentional tort. In other words, the issue is whether an action comprehending one or more negligent torts actually has at its core an intentional tort by someone.'" *Id.* (quoting *Slawson v. Fast Food Enters.*, 671 So. 2d 255, 258 (Fla. 4th DCA 1996)).

*Merrill Crossings* makes it clear that section 768.81 cannot be avoided simply because the action includes an intentional tort — rather the "entire action" must be "founded on an intentional tort." Stated another way, the entire action must have an intentional tort "at its core."

Considering the interplay between section 768.81 and an *Engle* progeny suit alleging causes of actions for negligence and intentional tort, the *Sury* court came to a decision in accord with the direction of *Merrill Crossings.* 118 So. 3d at 852. There, the trial court refused to reduce the plaintiff's compensatory damages award by the smoker's comparative fault based on its conclusion that the "core" of the plaintiff's suit was founded in

intentional tort. *Id.* The First DCA found "no abuse of discretion in the trial court's determination that although the plaintiff pled negligence and strict liability, the additional allegations of the intentional torts and the proof of affirmative, calculated misrepresentations in the tobacco companies' advertising and other publications supported the conclusion that this action 'actually had at its core an intentional tort by someone.'" *Id.*

Here, the trial court came to a different conclusion applying the same "core" analysis outlined in *Merrill Crossings.* In its order on post-trial motions, the court ruled that arguing *Engle* progeny suits are not founded in negligence and thus are not subject to the comparative fault statute is "to argue in the theater of the absurd." It explained:

> An attorney sued 'Big Tobacco' in *Engle* and argued the defendants negligently designed cigarettes; manipulated the nicotine in cigarettes; produced advertisement and marketing strategies destined to mislead the public; and other non-intentional 'tortuous' misconduct, specifically sounded in negligence and product liability.

> Concurrent with the negligence and strict liability claims plaintiffs brought intentional tort claims for fraud and misrepresentation which have led to several juries awarding punitive damages on the intentional tort claims.

We disagree with the *Sury* court to the extent it reviewed the trial court's "core" analysis under the abuse of discretion standard. Instead, we "review *de novo* the legal question of whether certain conduct qualifies as negligence or intentional tort." *Petit-Dos v. Sch. Bd. of Broward Cnty.*, 2 So. 3d 1022, 1024 (Fla. 4th DCA 2009). Applying the de novo standard, we agree with the trial court and hold that at its core, Plaintiff's suit is a products liability suit based on conduct grounded in negligence.

*Affirmed in part, reversed in part and remanded.*

MAY, J., concurs.
TAYLOR, J., concurs in part and dissents in part with opinion.

TAYLOR, J., *concurring in part and dissenting in part.*

I concur in the majority's decision affirming the trial court's denial of R.J. Reynolds's motion for directed verdict and motion for new trial. However, I respectfully disagree with the majority's reversal of the trial

12

court's denial of the tobacco company's motion for remittitur of punitive damages.  I also disagree with the majority's affirmance, on cross-appeal, of the trial court's reduction of compensatory damages based on comparative fault.

The trial court did not abuse its discretion in denying R.J. Reynolds's motion for remittitur of the $30 million in punitive damages.  The jury's award was properly based on the evidence presented and, as the trial court determined, it was not excessive under Florida law or federal due process.  As our court has recognized in other *Engle* progeny cases, the purpose of punitive damages is to punish a defendant's past wrongful conduct and deter future misconduct.  *Philip Morris USA Inc. v. Cohen*, 102 So. 3d 11, 16 (Fla. 4th DCA 2012).  Here, the record is replete with evidence of the tobacco company's continued attempts to discredit scientific research revealing the potential harm caused by its products, its costly campaign to mislead the public about the hazards of smoking, and its manipulation of nicotine levels in cigarettes to make them even more addictive.  *See Lorillard Tobacco Co. v. Alexander*, 123 So. 3d 67, 79-83 (Fla. 3d DCA 2013) (reviewing a similar record and finding that the evidence supported an award of $25 million punitive damages against Lorillard).

Although the trial court was puzzled by the fact that the jury awarded the plaintiff more than the $25 million requested by plaintiff's counsel, the court expressly found that the jury's award "was not infected by bias, prejudice, passion or any other sentiment."  Further, we have long held "that a jury might properly award damages equal to or in excess of those requested by counsel in closing argument."  *Lopez v. Cohen*, 406 So. 2d 1253, 1256 (Fla. 4th DCA 1981).  No doubt plaintiff's counsel asked the jury not to award more than $25 million because this amount has been affirmed by Florida courts and is thus considered "safe" from reversal on a claim of excessiveness.  But there was nothing illogical about the jury's decision to punish the tobacco company in an amount greater than that argued by plaintiff's counsel.  The trial court's statement suggesting that there was no reason for the jury to exceed the award sought by plaintiff's counsel was inconsistent with our precedent in *Lopez* and does not somehow compel a remittitur.

Likewise, the mere fact that $25 million is the highest award approved thus far on appeal does not mean that it should forever remain a cap.  The $30 million punitive damages award in this case is only 20% higher than $25 million and falls within a reasonable range of damages.  Furthermore, the 2.9 to 1 ratio of punitive damages to compensatory damages ($10.5 million) is lower than that already approved by other Florida courts.  *See R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1071-72 (Fla. 1st

DCA 2010) (approving a 7.58 to 1 ratio); *Owens-Corning Fiberglas v. Ballard*, 749 So. 2d 483 (Fla. 1999) (upholding punitive damages award in an asbestos insulation case that was nearly 18 times the compensatory damages award). Notably, there are no *Engle* progeny cases suggesting that a $30 million punitive damages award is excessive. In light of the historical use of treble damages as a punitive remedy, I cannot conclude that the 2.9 to 1 ratio in this case is excessive. The $30 million punitive damages award was within constitutional limits, was supported by the evidence, and was an amount that could be adduced in a logical manner by reasonable persons. I would affirm the trial court's denial of R.J. Reynolds's motion for remittitur of the punitive damages award.

I would reverse, however, the trial court's reduction of the plaintiff's compensatory damages based on the decedent's comparative fault. Our comparative fault statute provides an exception for intentional tort claims, and although a products liability claim was included in the complaint, this lawsuit, when viewed in its entirely, essentially alleges intentional misconduct by the tobacco company. As the First District found in *R.J. Reynolds Tobacco Co. v. Sury*, 118 So. 3d 849 (Fla. 1st DCA 2013), the "core" of *Engle* progeny cases is intentional misconduct. The gravamen of the charge is that the tobacco company intentionally designed its products in a defective manner and pursued a callous and intentional course of tortious conduct by fraudulent concealment. I therefore disagree with the majority's conclusion that this lawsuit is based on conduct grounded in negligence. But like the majority, I would use a de novo standard, instead of an abuse of discretion standard, in reviewing the trial court's "core" determination and find that the "core" of *Engle* progeny actions is intentional misconduct as a matter of law.

Moreover, on the waiver issue, the record does not support the trial court's finding that the plaintiff waived the intentional tort exception to the comparative fault statute. The facts in this case are more like those in *Sury*, where the First District found no waiver. Here, the plaintiff made it clear in her complaint and in both opening statement and closing argument to the jury that her admission that the decedent bore some responsibility applied only to the negligence and strict liability claims and not to the intentional tort claims. Further, the trial court told the jury at the beginning of the trial that the plaintiff sought apportionment only as to the negligence and strict liability claims and not as to the intentional tort claims, and later instructed the jury that the plaintiff "admitted that on the claims for *negligence and defective product*, [the decedent] bears some percentage of fault and that his fault was a proximate cause, in combination with the acts of omission of the defendants, of his smoking-related lung cancer and death." The trial court also instructed the jury

not to make any reductions in the amount of damages based on the decedent's fault, but gave no indication that it would reduce the damage award by comparative fault. In addition, to avoid a claim of waiver, the plaintiff had the trial court change the order of questions on the verdict form so comparative fault came before the intentional tort liability questions. In sum, the record does not show that plaintiff did anything to invite the court to apply comparative fault to her intentional tort claims.

For the above reasons, I would reverse the trial court's post-trial order on comparative fault and remand for entry of an amended judgment awarding plaintiff the full compensatory damages found by the jury. I would affirm in all other respects.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

15