NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


PHILIP MORRIS USA INC. and LIGGETT
GROUP, LLC,

        Appellants/Cross-Appellees,

v.

RICHARD BOATRIGHT and DEBORAH
BOATRIGHT,

        Appellees/Cross-Appellants.

Case No. 2D15-622

Opinion filed April 12, 2017.

Appeal from the Circuit Court for Polk
County; John M. Radabaugh, Judge.

Adriana M. Paris, Terri L. Parker, and
Sean T. Becker of Shook, Hardy & Bacon
L.L.P., Tampa; Geoffrey J. Michael of
Arnold & Porter LLP, Washington, DC; and
William P. Geraghty and Rachel A. Canfield
of Shook, Hardy & Bacon L.L.P., Miami;
for Appellant/Cross-Appellee Philip Morris
USA Inc.

Karen H. Curtis of Clarke Silverglate,
P.A., Miami; and Leonard A. Feiwus and
Ann M. St. Peter-Griffith of Kasowitz,
Benson, Torres & Friedman LLP, Miami,
for Appellant/Cross-Appellee Liggett
Group LLC.

Celene H. Humphries, Steven L.
Brannock, Philip J. Padovano, Maegen

P. Luka, and Thomas J. Seider of
Brannock & Humphries, Tampa; and
Scott Schlesinger, Steven Hammer,
Jonathan R. Gdanski, and Brittany
Chambers of Schlesinger Law Offices,
P.A., Fort Lauderdale, for Appellees/
Cross-Appellants.

SILBERMAN, Judge.

In this Engle[1] progeny case, Philip Morris USA Inc. and Liggett Group,

LLC (the Defendants) appeal a final judgment in favor of Richard Boatright, who was a

heavily addicted smoker, and his wife, Deborah Boatright, in the total amount of $32.75

million for compensatory and punitive damages.  The jury found Philip Morris liable on

theories of negligence, strict liability, fraudulent concealment, and conspiracy to commit

fraud by concealment.  The jury found Liggett liable for conspiracy to commit fraud by

concealment.  Philip Morris raises seven issues on appeal, including issues regarding

comments in closing argument, the introduction of evidence, comparative fault, and

punitive damages.  Liggett raises three issues on appeal regarding the conspiracy

verdict, joint and several liability, and punitive damages.  We affirm on the main appeal.

The Boatrights cross-appeal regarding two issues related to comparative

fault.  We reverse on the cross-appeal.  The trial court erred when it reduced the

compensatory damages award by Mr. Boatright's comparative fault because the

apportionment statute does not apply to an action based on an intentional tort.

Therefore, we remand for the trial court to amend the judgment to reflect the full amount

of the jury's verdict.  In doing so, we certify conflict with R.J. Reynolds Tobacco Co. v.

---

[1]Engle v. Liggett Grp., Inc., 945 So. 2d 1246 (Fla. 2006).

Schoeff, 178 So. 3d 487 (Fla. 4th DCA 2015), review granted, No. SC15-2233, 2016 WL 3127698 (Fla. May 26, 2016), R.J. Reynolds Tobacco Co. v. Grossman, 42 Fla. L. Weekly D106 (Fla. 4th DCA Jan. 4, 2017), and R.J. Reynolds Tobacco Co. v. Calloway, 201 So. 3d 753 (Fla. 4th DCA 2016), review denied, No. SC16-1937, 2017 WL 1023712 (Fla. Mar. 16, 2017), to the extent that they hold that the core of these types of actions is grounded in negligence and that the comparative fault statute is applicable to reduce the verdict by the smoker's comparative fault.

The Boatrights brought this action against the Defendants seeking to recover damages for Mr. Boatright, who was a heavily addicted smoker, and for his wife of thirty years, Deborah Boatright, for loss of consortium. Mr. Boatright's addiction to these cigarettes ultimately led to his diagnosis of chronic obstructive pulmonary disease ("COPD") in 1992 and two double-lung transplants. Relevant here are the allegations of the second amended complaint for negligence, strict liability, fraudulent concealment, and conspiracy to fraudulently conceal. The trial court conducted a three-week-long trial.

The evidence presented showed that the Defendants and their co-conspirators in the tobacco industry intentionally designed addictive and deadly cigarettes and conspired for fifty years to hide the dangers of smoking cigarettes from the public. The tobacco industry spent billions of dollars to highly engineer cigarettes to promote addiction to nicotine so that smokers would buy more cigarettes. And the tobacco industry searched for new smokers by investing heavily in marketing that targeted youths. In internal company documents, the industry called these young people "replacement smokers" and "crops" to be harvested.

Mr. Boatright began smoking when he was twelve years old in direct response to youth marketing. He continued to smoke for the next thirty-eight years. From 1966 to 2004, Mr. Boatright smoked over 25,000 packs of cigarettes. The evidence showed that Mr. Boatright was a Marlboro man, smoking primarily Philip Morris cigarettes, and that he smoked a de minimis amount of Liggett cigarettes.

Mr. Boatright was a professional ballroom dancer but had the lungs of an eighty-eight-year-old man when he was diagnosed with COPD at the age of thirty-nine. He tried quitting cold turkey and tried prescription drugs, gum, and hypnosis to quit. After his COPD diagnosis, Mr. Boatright struggled for over eleven years but finally quit. Years later, he had to undergo two double-lung transplants. He was sixty-one at the time of trial and continues to suffer very serious side effects. For example, his colon ruptured within hours of arriving home after the first transplant, and he now has a colostomy bag. In order to be close to the Mayo Clinic for Mr. Boatright's many medical visits, Mrs. Boatright sold the house her father built and moved from Lakeland to Jacksonville.

The evidence also showed that the tobacco industry, including the Defendants, engaged in a conspiracy to conceal and misrepresent information about the addictiveness of nicotine and the serious health risks caused by smoking nicotine cigarettes. Industry executives agreed to attack the sources of health warnings and to cast doubt on the connection between smoking and disease. One of the many internal documents from Phillip Morris introduced into evidence stated that "doubt is our product." But at the same time, the tobacco industry pretended to be on a crusade to confirm the safety of its product and promised the American public that it would report

back if it discovered anything.  The industry's intent was not just to hide the truth; it was to create doubt to give addicted smokers an excuse to keep smoking.

The industry's efforts also included design features, such as filtered cigarettes, that worked to undermine a smoker's motivation and ability to quit smoking. In the 1950s, the Engle defendants began marketing filtered cigarettes to the public as a safer alternative.  Mr. Boatright smoked filtered cigarettes.  The tobacco industry concealed from the public that smokers of filtered cigarettes ingest more tar and other carcinogens than those who smoke unfiltered cigarettes.  The Engle defendants all concealed the fact that they intentionally designed their filtered cigarettes to increase the dose of nicotine, thereby enhancing addictiveness to cigarettes and resulting in greater sales.  The Defendants did not publicly admit that smoking nicotine cigarettes is addictive and causes COPD and other illnesses until after Mr. Boatright was diagnosed with COPD.

At the close of the Boatrights' case, the trial court directed a verdict in favor of Liggett as to the claims for negligence, strict liability, and fraudulent concealment.  The case against Liggett went to the jury only on the conspiracy claim. With respect to comparative fault, the verdict form asked the jury to state what percentage of any fault it charged to Philip Morris and Mr. Boatright that was a legal cause of Mr. Boatright's COPD.  The verdict form instructed the jury as follows:

> *In determining the total amount of damages, you should not make any reduction because of the responsibility of Richard Boatright.  The court will enter a judgment based on your verdict and, in entering judgment, will make any reduction required by law to reduce the total amount of damages by the percentage of fault which you find is chargeable to Richard Boatright.  If you find for the Plaintiffs on either of the intentional torts, then the amount of compensatory*

*damages awarded to Plaintiffs will not be reduced by
Richard Boatright's fault.*

The jury found that Mr. Boatright was addicted to Philip Morris cigarettes and that his addiction caused his COPD. Further, the jury found that Philip Morris's concealment or omission of information regarding smoking cigarettes caused Mr. Boatright's COPD. The jury also found that the participation in an agreement to conceal by each of the Defendants was a legal cause of Mr. Boatright's COPD and thus found against both of the Defendants on the conspiracy claim.

The jury allocated 85% fault to Philip Morris and 15% fault to Mr. Boatright. The jury awarded a total of $15 million in compensatory damages. For Mr. Boatright, the jury awarded $2.5 million in economic damages and $10 million in damages for his past and future pain and suffering. For Mrs. Boatright, the jury awarded $2.5 million for her past and future loss of consortium. In the second phase of the trial, the jury awarded $19.7 million in punitive damages against Philip Morris and $300,000 against Liggett. We note that the jury's punitive damages award is less than the $20 million that the Boatrights' counsel requested against Philip Morris and less than the $5 million requested against Liggett.

The trial court denied all of Philip Morris's posttrial motions, except that it granted the request to reduce the compensatory damages award by Mr. Boatright's comparative fault but did not explain its reasoning. The trial court entered a final judgment under which the Defendants are jointly and severally liable for $10,625,000 in compensatory damages to Mr. Boatright and $2,125,000 in compensatory damages to Mrs. Boatright. In accordance with the jury's verdict, the judgment awards punitive

damages of $19.7 million against Philip Morris and $300,000 against Liggett. We first

address the issue of comparative fault that the Boatrights raised in their cross-appeal.

## The Boatrights' Cross-Appeal

The Boatrights contend that the trial court erred when it reduced the

compensatory damages award by Mr. Boatright's comparative fault. At issue is whether

the comparative fault statute, section 768.81, Florida Statutes (Supp. 1992),[2] requires

that the Boatrights' verdict be reduced by comparative fault. First, we note that the

Boatrights' counsel did not waive the argument that section 768.81 does not apply to the

verdict. And we point out that the jury was instructed that if it found for the Boatrights on

either of the intentional torts, then the amount of compensatory damages would not be

reduced by Mr. Boatright's comparative fault. The same information was given to the

jury on the verdict form.

Second, we address the merits of the Boatrights' argument and agree that

section 768.81 is inapplicable. Thus, the trial court should not have reduced the

compensatory award by Mr. Boatright's comparative fault.

The case against Philip Morris proceeded on the two product claims and

the two fraud claims. On the verdict form, the jury found that the "concealment or

omission of material information about the health effects or addictive nature of smoking

cigarettes or both" by Philip Morris "was a legal cause of Richard Boatright's COPD."

The jury also found as to both Philip Morris and Liggett that "the agreement to conceal

---

[2]The applicable version of section 768.81 is the one that was in effect when the cause of action arose. See D'Angelo v. Fitzmaurice, 863 So. 2d 311, 314 n. 9 (Fla. 2003), superseded by statute on other grounds as stated in Port Charlotte HMA, LLC v. Suarez, 41 Fla. L. Weekly D2393, D2395 (Fla. 2d DCA Oct. 26, 2016).

or omit information about the health effects or addictive nature of smoking cigarettes or both was a legal cause of Richard Boatright's COPD." Even in the negligence count, the Boatrights' second amended complaint alleges that the "Defendants had actual knowledge of the wrongfulness of their conduct and the high probability that injury or damage to the Smoker would result, and despite that knowledge, intentionally pursued their course of conduct."

Section 768.81 applies to "negligence cases" which include actions based on theories of negligence, strict liability, and product liability. § 768.81(4)(a). The statute provides that "[i]n an action to which this section applies, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as economic and noneconomic damages for an injury attributable to the claimant's contributory fault, but does not bar recovery." § 768.81(2). The statute explicitly does not apply to "any action based upon an intentional tort." § 768.81(4)(b). Further, the statute instructs that "[i]n determining whether a case falls within the term 'negligence cases,' the court shall look to the substance of the action and not the conclusory terms used by the parties." § 768.81(4)(a).

As to our standard of review, we agree with the Fourth District in R.J. Reynolds Tobacco Co. v. Schoeff, 178 So. 3d 487, 496 (Fla. 4th DCA 2015), review granted, No. SC15-2233, 2016 WL 3127698 (Fla. May 26, 2016), that we review de novo the legal issue of whether the conduct qualifies as negligence or as an intentional tort. To the extent the First District applied an abuse of discretion standard in R.J. Reynolds Tobacco Co. v. Sury, 118 So. 3d 849, 852 (Fla. 1st DCA 2013), we disagree with the use of that standard. But we agree with the Sury court's conclusion that section

768.81 did not require reduction of the compensatory damage award by the smoker's percentage of fault. See id.

In Sury, the First District recognized that "the public policy behind the exclusion in section 768.81 for intentional torts" is based on the fact that intentional wrongs and simple negligence are different as to the type of fault " 'and in the social condemnation attached to it.' " 118 So. 3d at 852 (quoting Merrill Crossings Assocs. v. McDonald, 705 So. 2d 560, 562 (Fla. 1997)). The Sury court stated that "although the plaintiff pled negligence and strict liability, the additional allegations of the intentional torts and the proof of affirmative, calculated misrepresentations in the tobacco companies' advertising and other publications supported the conclusion that this action 'actually had at its core an intentional tort by someone.' " Id. (quoting Merrill Crossings Assocs., 705 So. 2d at 563); see also R.J. Reynolds Tobacco Co. v. Allen, 42 Fla. L. Weekly D491, D492-93 (Fla. 1st DCA Feb. 24, 2017) (following Sury and determining that the trial court did not commit error by refusing to apportion fault in a case dealing with the intentional torts of fraudulent concealment and conspiracy to fraudulently conceal); Philip Morris USA Inc. v. Buchanan, 155 So. 3d 1156, 1158 (Fla. 1st DCA 2014) (relying upon Sury as to the substance of the action being an intentional tort).

The Fourth District in Schoeff reached a different result in an Engle lawsuit and held that "at its core, Plaintiff's suit is a products liability suit based on conduct grounded in negligence." 178 So. 3d at 496; see also R.J. Reynolds Tobacco Co. v. Grossman, 42 Fla. L. Weekly D106, D107 (Fla. 4th DCA Jan. 4, 2017) (relying on Schoeff); R.J. Reynolds Tobacco Co. v. Calloway, 201 So. 3d 753, 767 (Fla. 4th DCA 2016) (same), review denied, No. SC16-1937, 2017 WL 1023712 (Fla. Mar. 16, 2017).

The dissent in Schoeff aptly stated that "[t]he gravamen of the charge is that the tobacco company intentionally designed its products in a defective manner and pursued a callous and intentional course of tortious conduct by fraudulent concealment." 178 So. 3d at 497 (Taylor, J., concurring in part and dissenting in part). We agree with the First District in Sury and the dissent in Schoeff that "the 'core' of Engle progeny actions is intentional misconduct as a matter of law." Id.

Therefore, we reverse the final judgment and remand for the trial court to enter an amended judgment to reflect the full amount of the jury's verdict. In doing so, we certify conflict with Schoeff, Grossman, and Calloway to the extent that they hold that the core of those actions is grounded in negligence and that section 768.81 is applicable to reduce the verdict by the smoker's comparative fault.

**Philip Morris's Main Appeal**

In issue one, Philip Morris contends that a new trial is necessary because the trial court allowed the Boatrights' counsel to inflame the jury during closing arguments. It argues that the Boatrights' counsel disparaged the defense and defense counsel and improperly argued regarding nationwide harm and international harm caused by cigarettes. In reviewing the points raised, we note that many comments were a fair comment on the evidence or even a reading from Philip Morris's own documents that were admitted into evidence, such as the references to "doubt is our product." Philip Morris relies in part on Calloway to argue for a new trial, but the references to the defense and defense counsel in the present case were very limited and far less significant than the comments in Calloway.

- 10 -

Regarding arguments concerning harm to others and the number of deaths from smoking, it was made clear to the jury that harm to others was relevant only to show the degree of reprehensibility of the Defendants' conduct. See R.J. Reynolds Tobacco Co. v. Townsend, 90 So. 3d 307, 313 n.7 (Fla. 1st DCA 2012) (citing Philip Morris USA v. Williams, 549 U.S. 346, 355 (2007)). In its closing, the Boatrights' counsel read the instruction to the jury that it could consider harm to others in assessing the reprehensibility of the Defendants' acts as proven in this case. And the trial court instructed the jury that that it could not impose punitive damages to punish a defendant for harm caused to others.

We also note that a number of the comments challenged on appeal were made without objection. The trial court denied the motion for new trial regarding the comments by the Boatrights' counsel, and the trial court is in the best position to judge the effect of the comments. "A trial court's denial of a motion for mistrial and a motion for new trial based on improper closing arguments are reviewed for abuse of discretion." Calloway, 201 So. 3d at 759 (quoting Whitney v. Milien, 125 So. 3d 817, 818 (Fla. 4th DCA 2013)). We find no abuse of discretion in the trial court's denial of Philip Morris's motion for new trial. And to the extent that any error occurred in the closing argument, there is no reasonable possibility that any error contributed to the verdict. See Special v. W. Boca Med. Ctr., 160 So. 3d 1251, 1256 (Fla. 2014) (stating standard for harmless error in civil cases).

In issue two, Philip Morris relies primarily on its argument in issue one to summarily contend that the trial court erred in admitting evidence during the testimony of the Boatrights' expert witness, Dr. Proctor. Because we reject Philip Morris's

arguments in issue one, we reject them as to issue two as well, and Philip Morris has not otherwise established reversible error as to the admission of the evidence.

In issue three, Philip Morris contends that the trial court erred in failing to ask the jury to determine Liggett's share of fault based on the comparative fault statute, section 768.81. We find no error because the comparative fault statute does not apply, as discussed above in the Boatrights' cross-appeal.

In issue four, Philip Morris contends that the punitive damages award against it must be significantly reduced because it is excessive. The jury awarded $15 million in compensatory damages to Mr. and Mrs. Boatright and awarded $19.7 million in punitive damages against Philip Morris. We note that the Boatrights' counsel asked for more than the jury awarded, and the evidence fully supports the jury's award. The trial court did not err in declining to find the punitive damages excessive. See Lorillard Tobacco Co. v. Alexander, 123 So. 3d 67, 82-83 (Fla. 3d DCA 2013) (upholding punitive damage award of $25 million when the remitted compensatory award was $10 million); R.J. Reynolds Tobacco Co. v. Townsend, 118 So. 3d 844, 847 (Fla. 1st DCA 2013) (affirming punitive damages award of $20 million when the ratio of punitive damages to compensatory damages was 1.85 to 1); cf. Schoeff, 178 So. 3d at 491 (determining that punitive damages award of $30 million fell "on the excessive side of the spectrum" when the compensatory award was $10.5 million).

In issue five, Philip Morris contends that it is entitled to a credit against the punitive damages award in this case based on the "Guaranteed Sum Stipulation" Philip Morris entered into in the Engle case. We reject this argument and agree with the Boatrights that the Guaranteed Sum Stipulation specifically applied to the judgment in

Engle and is not applicable to the judgment in this case. See Calloway, 201 So. 3d at 756 (noting that the issue of a credit against punitive damages based on the stipulation was raised but not reversing on that basis or commenting on the issue for purposes of remand).

In issues six and seven, Philip Morris recognizes that the issues have already been determined by controlling case law but wishes to preserve its position for further review. As to issue six, the acceptance of the Phase I Engle findings as res judicata does not violate the Engle defendants' right to due process. Phillip Morris USA, Inc. v. Douglas, 110 So. 3d 419, 436 (Fla. 2013). As to issue seven, punitive damages may be awarded for strict liability and negligence claims in an Engle progeny case. Soffer v. R.J. Reynolds Tobacco Co., 187 So. 3d 1219, 1234 (Fla. 2016) (approving Philip Morris USA, Inc. v. Hallgren, 124 So. 3d 350, 358 (Fla. 2d DCA 2013), regarding the issue of punitive damages).

**Liggett's Main Appeal**

In issue one, Liggett contends that the trial court should have directed a verdict in Liggett's favor on the conspiracy claim because Mr. Boatright's de minimis use of Liggett's cigarettes did not cause his injury. But the law of civil conspiracy holds co-conspirators liable for harm caused by other members of a conspiracy to commit an intentional tort. Rey v. Philip Morris, Inc., 75 So. 3d 378, 383 (Fla. 3d DCA 2011) (stating that the law of civil conspiracy extends "liability to a co-conspirator which may not have caused any direct injury to the claimant" and recognizing "the policy that an entire group of conspirators acting collectively to achieve an unlawful goal—including consumer fraud—should be jointly and severally liable for the acts of all participants in

- 13 -

the scheme"); see also Blake v. Lorillard Tobacco Co., 81 So. 3d 637, 638 (Fla. 5th

DCA 2012) (adopting "the well-reasoned opinion" of the court in Rey regarding civil

conspiracy). The jury found that Philip Morris's fraudulent concealment caused Mr.

Boatright's injuries and that Philip Morris and Liggett's agreement to conceal was a legal

cause of Mr. Boatright's injuries. Therefore, Liggett was properly held liable as a

member of the conspiracy with Philip Morris to fraudulently conceal.

In issue two, Liggett contends that it cannot be held jointly and severally

liable for compensatory damages because the jury was not given an opportunity to

allocate fault to Liggett. However, based on the resolution of the cross-appeal that the

exception for intentional torts in the comparative fault statute, section 768.81(4)(b),

applies, Liggett is not entitled to relief on this issue.

In issue three, Liggett requests that the punitive damages award be

vacated if this court finds merit in either of its arguments in its first and second issues.

Because we have determined that Liggett's arguments do not have merit, we affirm the

$300,000 punitive damage award against Liggett.

**Conclusion**

We affirm on Philip Morris's main appeal and on Liggett's main appeal.

Because we have determined on the Boatrights' cross-appeal that the core of this action

is grounded in intentional misconduct, the comparative fault statute, section 768.81,

does not apply. Therefore, we reverse the final judgment and remand for the trial court

to enter an amended judgment to reflect the full amount of the jury's verdict. In doing

so, we certify conflict with Schoeff, Grossman, and Calloway to the extent that they hold

- 14 -

that the core of these types of actions are grounded in negligence and that section 768.81 is applicable to reduce the verdict by the smoker's comparative fault.

Affirmed in part, reversed in part, and remanded.

LaROSE and BADALAMENTI, JJ., Concur.