NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

R.J. REYNOLDS TOBACCO COMPANY,    )
                                  )
                                  )
            Appellant,            )
                                  )
v.                                )        Case No. 2D16-1603
                                  )
CINDY EVERS, as Personal          )
Representative of the Estate of Jacqueline  )
Loyd,                             )
                                  )
            Appellee.             )
                                  )

Opinion filed September 15, 2017.

Appeal from the Circuit Court for
Hillsborough County; Emmett L. Battles,
Judge.

Gregory G. Katsas and John M. Gore of
Jones Day, Washington, D.C. (withdrew
after briefing); John M. Walker of Jones
Day, Atlanta, Georgia; Troy A. Fuhrman
and Marie A. Borland of Hill, Ward &
Henderson, P.A., Tampa, for Appellant.

Hendrick Uiterwyk of Abrahamson
& Uiterwyk, Tampa; Michael J.
Trentalange of Trentalange & Kelley,
P.A., Tampa; Celene H. Humphries,
Maegen P. Luke, and Thomas Seider of
Brannock & Humphries, Tampa, for
Appellee.

MORRIS, Judge.

R.J. Reynolds Tobacco Company (R.J. Reynolds) appeals a second amended final judgment entered in favor of Cindy Evers, in her capacity as personal representative of the Estate of Jacqueline Loyd. Evers' wrongful death action was predicated on claims that Loyd was an Engle[1] class member and that Loyd's lung cancer was, at least in part, caused by R.J. Reynolds and Lorillard Tobacco Company (for whom R.J. Reynolds is the successor in interest).

In bifurcated proceedings, a jury determined that Evers was entitled to both noneconomic compensatory damages and punitive damages (as against R.J. Reynolds only). The trial court subsequently directed a verdict in favor of R.J. Reynolds on certain claims, and as a result, the punitive damages award was vacated and the compensatory damages award was reduced. Evers appealed and R.J. Reynolds cross-appealed. See Evers v. R.J. Reynolds Tobacco Co., 195 So. 3d 1139 (Fla. 2d DCA 2015).

In the first appeal, we reversed the directed verdict, thereby reinstating the punitive damages award. Id. at 1141. However, we declined to reach certain issues pertaining to the punitive damages award because those issues had not been ruled on by the trial court. Id. at 1141 n.2. On remand, the trial court entered the second amended final judgment, finding that the pre-1999 version of the punitive damages statute applied and that there was clear and convincing evidence supporting a punitive damages award in excess of the statutory cap. The trial court also concluded that the action was based on an intentional tort making the compensatory damages award

---

[1]Engle v. Liggett Grp., Inc., 945 So. 2d 1246 (Fla. 2006).

ineligible for a comparative fault reduction. Finally, upon Evers' motion, the trial court concluded that interest on the judgment accrued from May 15, 2013, the date of the original judgment.

Although R.J. Reynolds raises numerous arguments on appeal, the issue of whether the compensatory damages award must be reduced by the percentage of Loyd's comparative fault is controlled by our recent opinion in Philip Morris USA Inc. v. Boatright, 217 So. 3d 166 (Fla. 2d DCA 2017), appeal filed, SC17-894 (Fla. May 12, 2017). Therefore we will not address it further. However, as in Boatright, we certify conflict with R.J. Reynolds Tobacco Co. v. Schoeff, 178 So. 3d 487 (Fla. 4th DCA 2015), review granted, No. SC15-2233, 2016 WL 3127698 (Fla. May 26, 2016), and the line of cases relying on it[2] to the extent that they hold that the core of these types of actions are grounded in negligence and that the comparative fault statute is applicable to reduce the verdict by the smoker's comparative fault. R.J. Reynolds also asks this court to revisit two arguments raised in the prior appeal regarding improper closing arguments made by Evers' counsel and the trial court's failure to give a jury instruction on a conspiracy claim. We decline to do so. R.J. Reynolds also argues that allowing res judicata to apply to the phase I Engle findings[3] violates R.J. Reynolds' due process

---

[2]Philip Morris USA Inc. v. McKeever, 207 So. 3d 907 (Fla. 4th DCA 2017); R.J. Reynolds Tobacco Co. v. Grossman, 211 So. 3d 221 (Fla. 4th DCA 2017), appeals filed, SC17-688 (Fla. Apr. 13, 2017) and SC17-706 (Fla. Apr. 18, 2017); R.J. Reynolds Tobacco Co. v. Calloway, 201 So. 3d 753 (Fla. 4th DCA 2016), review denied, No. SC16-1937, 2017 WL 1023712 (Fla. Mar. 16, 2017).

[3]In Engle, the Florida Supreme Court approved various findings relating to tobacco companies' liability to Engle-progeny plaintiffs. These findings include: (1) "that smoking cigarettes causes" many specifically listed diseases and conditions; (2) "that nicotine in cigarettes is addictive"; (3) "that the defendants placed cigarettes on the market that were defective and unreasonably dangerous"; (4) "that the defendants concealed or omitted material information not otherwise known or available knowing

rights, but it acknowledges that issue has already been determined by case law, and it wishes to preserve the issue for further review. See Philip Morris USA, Inc. v. Douglas, 110 So. 3d 419, 436 (Fla. 2013) (holding that the acceptance of the Engle findings as res judicata does not violate an Engle defendant's right to due process).

Instead, we affirm the decision of the trial court in all respects, and we write only to address the issues of the application of the pre-1999 version of the punitive damages statute and the evidence offered in support thereof and the award of interest dating back to the date of the original final judgment.

## BACKGROUND

Evers sued R.J. Reynolds in 2007, alleging that her mother had been a member of the class prospectively certified in Engle v. Liggett Group, Inc., 945 So. 2d 1246 (Fla. 2006). The Engle class comprised all Florida residents who, as of November 21, 1996, suffered or had died from diseases caused by an addiction to cigarettes. See id. at 1274. Evers' amended complaint alleged claims of negligence, strict liability, fraudulent concealment, and conspiracy to commit fraudulent concealment. Prior to trial, the trial court ruled that Evers could only seek punitive damages on her claims for concealment and conspiracy.

---

that the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both"; (5) "that the defendants agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment"; (6) "that all of the defendants sold or supplied cigarettes that were defective"; (7) "that all of the defendants sold or supplied cigarettes that, at the time of sale or supply, did not conform to representations of fact made by said defendants"; and (8) "that all of the defendants were negligent." 945 So. 2d at 1276-77.

At the end of the first phase of the trial, the jury determined that Loyd was an <u>Engle</u> class member and that Evers was entitled to recover on all of her claims. The jury allocated thirty-one percent of the fault to Loyd, sixty percent to R.J. Reynolds, and nine percent to Lorillard, and the jury awarded $2,950,000 to Evers for noneconomic compensatory damages. At the end of the second phase of the trial, the jury awarded $12,360,024 in punitive damages as they related to Evers' conspiracy and concealment claims. The trial court subsequently directed a verdict in R.J. Reynolds' favor on the concealment and conspiracy claims, thereby vacating the punitive damages award. The trial court also reduced the compensatory damages award to $2,035,500 to reflect the jury's allocation of comparative fault.

After this court reversed the directed verdict on appeal and the case was remanded, Evers moved for entry of judgment in the full amount of the jury's compensatory and punitive damages amounts. R.J. Reynolds opposed the motion, arguing in relevant part that the post-1999 statutory cap on punitive damages applied to this case.[4] Ultimately, the trial court entered the second amended final judgment, awarding Evers the original compensatory and punitive damages award amounts. After Evers filed a subsequent motion to amend, the trial court awarded interest accruing from the date of the original final judgment.

**ANALYSIS**

I. The trial court properly applied section 768.73(1)(a) and (b), Florida Statutes (1995), to the punitive damages award.

---

[4]R.J. Reynolds also argued below that the compensatory damages award should be reduced based on Lloyd's comparative fault, an argument that we will not address as explained previously herein.

We first address R.J. Reynolds' argument that the jury's punitive damages award should be capped at an amount that is three times the compensatory damages award amount. R.J. Reynolds contends that the post-1999 version of section 768.73 is applicable because Evers' wrongful death action is based on Loyd's death in 2007. See Ch. 99-225, § 23(5), at 1418, Laws of Fla. (explaining that 1999 amendments apply only to "all causes of action arising after the effective date of this act," which was October 1, 1999). And R.J. Reynolds argues that in order to exceed the statutory cap pursuant to the post-1999 version, the jury was required to make findings regarding certain aggravating circumstances, which did not occur in this case. In the alternative, R.J. Reynolds argues that even if the pre-1999 version of the statute applied, the same three-to-one cap applied unless Evers proved by clear and convincing evidence that the award was not excessive, and R.J. Reynolds asserts that she failed to do so.

"Typically, the applicable version of a statute is the one 'in effect when the cause of action arose.' " R.J. Reynolds Tobacco Co. v. Allen, 42 Fla. L. Weekly D491, D493 (Fla. 1st DCA Feb. 24, 2017), (first quoting D'Angelo v. Fitzmaurice, 863 So. 2d 311, 314 n.9 (Fla. 2003); and then citing §§ 768.72(4) & 768.73(5), Fla. Stat.), reh'g granted (June 15, 2017).[5] And "[i]n many wrongful death actions, the cause of action accrues on the date of a decedent's death." Id. (citing Nationwide Mut. Fire Ins. Co. v.

---

[5]R.J. Reynolds filed a notice of supplemental authority in this appeal informing this court that its motion for rehearing en banc filed in Allen has been granted. While we acknowledge that the disposition of Allen could change on en banc review, we also note that the motion filed in Allen raised more than one issue. Thus it is also possible that the resolution of the issue of which version of the punitive damages statute is applicable could remain the same. Moreover, as of the date of this opinion, Allen and the holdings contained therein remain good law.

MacDonald, 645 So. 2d 1057 (Fla. 4th DCA 1994)). "However, Engle-progeny cases are different." Id. (citing Engle, 945 So. 2d 1246).

In order for a case to qualify as an Engle-progeny case, "a plaintiff's (or plaintiff's decedent's) 'symptoms of a tobacco-related disease or medical condition' must have manifested by November 21, 1996." Id. (citing R.J. Reynolds Tobacco Co. v. Ciccone, 190 So. 3d 1028, 1030 (Fla. 2016)). Here, Evers' amended complaint alleged that Loyd suffered from or was diagnosed with one or more of the diseases enumerated in Engle on or before November 21, 1996. And there is no dispute that the jury determined that Loyd was an Engle class member. Thus, Evers, as the personal representative of Loyd's estate, "qualified for the res judicata benefits of the Engle class." Id.; see also Toombs v. Alamo Rent-A-Car, Inc., 833 So. 2d 109, 118 (Fla. 2002) (quoting Celotex Corp. v. Meehan, 523 So. 2d 141, 147 (Fla. 1988), for the proposition that "[a] wrongful death action is derivative of the injured person's right, while living, to recover for personal injury"); Schoeff, 178 So. 3d at 492 n.3 (concluding, in an Engle-progeny case, that plaintiff's cause of action in a wrongful death case accrued in 1994 when her husband was diagnosed with lung cancer).

Although it was Evers who sought damages in this case—rather than Loyd—Evers' wrongful death action, like all Engle-progeny complaints, relates back to the 1994 Engle class-action complaint. Consequently, "the applicable statutory law [regarding punitive damages] also relates back to the Engle class." Allen, 42 Fla. L. Weekly at D493. This is because "a claim for punitive damages is not a separate, free-standing cause of action," but is instead "actually dependent on the underlying cause of action." Soffer v. R.J. Reynolds Tobacco Co., 187 So. 3d 1219, 1229-30 (Fla. 2016).

To the extent that R.J. Reynolds' argument could be construed to suggest that the post-1999 version of the statute applies because Evers filed an independent wrongful death action rather than amending a prior personal injury action brought by Loyd herself, we do not agree. Cf. id., at 1222 (involving Engle-progeny wrongful death action brought by widow many years after her husband's death wherein the court recognized widow's right to seek punitive damages); Schoeff, 178 So. 3d at 488-89 (involving an Engle-progeny wrongful death action brought by widow based on her husband's death from lung cancer caused by his addiction to cigarettes). While Evers did not file the wrongful death action until 2007 when Loyd died, her right to do so was based on Loyd's status as an Engle class member, i.e., Loyd's manifestation of a tobacco-related disease or medical condition prior to November 21, 1996. See Toombs, 833 So. 2d at 118.

Accordingly, because Evers was entitled to the res judicata effect of the Engle class, her cause of action was not controlled by the 1999 amendment to the punitive damages statute. Indeed, "[a]pplication of the post-1999 amendments to the punitive damages statute to [Evers'] claim[s] would impair those substantive rights." Allen, 42 Fla. L. Weekly at D493 (citing Alamo Rent-A-Car v. Mancusi, 632 So. 2d 1352, 1358 (Fla. 1994)).

II. R.J. Reynolds waived the issue of applying a three-to-one cap under the pre-1999 version of the statute, but even if the cap applied, Evers met her burden of proving that the punitive damages award was not excessive.

Having determined that the trial court properly applied the 1995 version of section 768.73(1)(a) and (b), we must next address R.J. Reynolds' contention that even under the pre-1999 version of the statute, there was a three-to-one cap that could not be exceeded unless Evers established by clear and convincing evidence that the award

was not excessive in light of the facts and circumstances that were presented to the jury. R.J. Reynolds contends that Evers failed to meet her burden.

The first problem with this argument is that it is procedurally barred. R.J. Reynolds did not specifically argue that the pre-1999 version of the statute imposed a cap on the punitive damages award amount until the February 1, 2016, hearing on Evers' motion to enter final judgment, which occurred after this court reversed the original final judgment and remanded the case to the trial court. Indeed, Evers objected, and the trial court below questioned the propriety of R.J. Reynolds' raising the issue so late. However, in an abundance of caution, Evers asked the trial court to rule on the merits of the issue for purposes of appellate review in the event that this court deemed the argument properly raised. The trial court ultimately concluded that Evers met her burden of proving by clear and convincing evidence that the award was not excessive.

We agree with Evers that R.J. Reynolds should have raised this issue in its motion for remittitur, which must be served within ten days after the jury verdict. See Fire & Cas. Ins. Co. of Conn. v. Sealey, 810 So. 2d 988, 991 (Fla. 1st DCA 2002) (recognizing that motion for remittitur must be served within ten days after return of jury verdict). But nowhere in R.J. Reynolds' motion for new trial, which included the request for a remittitur, did it argue that under the pre-1999 version of the statute, a three-to-one cap applied.

Although R.J. Reynolds argues in its reply that it presented evidence and arguments on this issue to the jury, it has failed to point to any specific document within the voluminous record that supports that assertion. Further, we are not persuaded that

R.J. Reynolds sufficiently preserved the issue by making brief references in its briefs filed in the prior appeal and on remand to the trial court to cases that applied the pre-1999 statutory cap.

However, even if this claim was properly addressed on the merits, R.J. Reynolds is not entitled to relief. The cap under the pre-1999 version of the statute can only be exceeded if the plaintiff establishes by clear and convincing evidence that the award was not excessive. We generally review a trial court's award of punitive damages for abuse of discretion. See Owens-Corning Fiberglas Corp. v. Ballard, 749 So. 2d 483, 488 (Fla. 1999). But we conduct de novo review of a trial court's determination as to whether a punitive damage award violates due process. See Engle, 945 So. 2d at 1263. As part of the due process analysis, we must determine whether there is a reasonable relationship between the compensatory damages award and the punitive damages award, which includes consideration of the defendant's conduct and harm to the plaintiff. Id. at 1264-65 (citing State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 424-26 (2003)).

In arguing that Evers failed to meet her burden of proving that the punitive damages award was not excessive, R.J. Reynolds argues that the trial court improperly relied upon Evers' mischaracterizations of the Engle findings and failed to explain how any of its findings regarding the punitive damages were related to the facts of Evers' case. R.J. Reynolds also contends the award was erroneous because: (1) it [R.J. Reynolds] is subject to cumulative awards against it for the same conduct, (2) a punitive award above the cap is unnecessary for punishment or deterrence, (3) the conduct that

served as the basis for the award happened decades ago and could not possibly recur, and (4) the trial court ignored substantial mitigating evidence.

In the trial court's order, it explicitly states that it "reviewed the record," and attached to Evers' supplemental memorandum in support of her second amended motion for entry of judgment were trial testimony excerpts that included expert opinion on how Loyd was personally affected. Thus it is clear to this court that the trial court had before it the record evidence presented at trial, including a portion that Evers submitted specifically in support of her argument that she was entitled to the punitive damages as awarded by the jury. In light of the voluminous trial record, we are not surprised that the trial court elected not to detail all of the factual evidence upon which it relied nor are we convinced that the summary reference to a review of the record indicates that the trial court failed to consider anything other than Evers' arguments or that it ignored R.J. Reynolds' mitigating evidence. R.J. Reynolds takes issue with the trial court's failure to identify the conduct that the trial court determined was "exceptionally egregious, targeted, lacking in confusion, and substantial," arguing that In re Standard Jury Instructions (Civil Cases 89-1), 575 So. 2d 194, 196 (Fla. 1991), defines "clear and convincing evidence" as "precise" and "explicit." But the Florida Supreme Court's use of such a definition does not equate to a requirement that a trial court explicitly list the factual evidence upon which it relied.

The fact that the trial court paraphrased the Engle findings and cited to them as part of the clear and convincing evidence supporting the punitive damages award does not change the result. Notably, in listing the paraphrased findings, the trial court stated that the evidence upon which it relied was not limited to those findings.

- 11 -

While there is no res judicata effect of the <u>Engle</u> findings as applied to claims for punitive damages, <u>Soffer</u>, 187 So. 3d at 1227, there is nothing prohibiting a trial court's use of the findings as a frame of reference when deciding whether a plaintiff has proven his or her individual punitive damages.

R.J. Reynolds also argues that the trial court erroneously shifted the burden of proof to it based on the trial court's finding that R.J. Reynolds failed to refute Evers' evidence. However, we do not agree with that interpretation. Rather, we conclude that that finding was merely one factor supporting the trial court's conclusion that Evers' presented clear and convincing evidence to establish that the punitive damages award was not excessive. Indeed, in other contexts, both the Florida Supreme Court and this court have referred to evidence being "clear and convincing" where unrebutted testimony was presented. <u>See, e.g.</u>, <u>Conahan v. State</u>, 118 So. 3d 718, 733 (Fla. 2013); <u>Dep't of Children & Family Servs. v. L. McC.</u>, 820 So. 2d 1064, 1066 (Fla. 2d DCA 2002) ("The record reflects that the evidence presented . . . was generally unrebutted and met the clear and convincing standard.").

Based on the fact that the trial court had the trial record before it, including testimony that linked R.J. Reynolds' conduct to the harm suffered by Loyd, and based on the trial court's acknowledgement that it reviewed the record and did not limit itself to consideration of the <u>Engle</u> findings, we cannot say that no reasonable judge would have reached the same conclusion as the trial judge in this case. <u>See</u> <u>Canakaris v. Canakaris</u>, 382 So. 2d 1197, 1203 (Fla. 1980). Nor can we say that the punitive damages award was so excessive so as to violate due process where it is clear to this court that it was based "upon the facts and circumstances of [R.J. Reynolds'] conduct

and the harm to [Loyd]." <u>Engle</u>, 945 So. 2d at 1265. Consequently, we conclude that the trial court properly determined that the punitive damages award was not excessive under the 1995 version of section 768.73 and that clear and convincing evidence supported a punitive damages award in excess of the statutory cap.[6]

   III. The trial court properly awarded interest accruing from the date of the original judgment.

   Finally, R.J. Reynolds argues that the trial court erred in awarding interest on the judgment from the date of the original final judgment entered on May 15, 2013. R.J. Reynolds argues that interest can only be awarded from the date of a first judgment where the original judgment is merely modified on appeal, rather than reversed. R.J. Reynolds notes that this court, in the initial appeal, declined to reach certain issues regarding the punitive damages award because the trial court had not ruled on them. R.J. Reynolds also notes that in the prior appeal, this court did not address R.J. Reynolds' argument concerning the application of comparative fault to the compensatory damages award, despite its request that this court do so. Based on those assertions, R.J. Reynolds contends that further judicial labor was required below and, therefore, that interest should have been awarded from the date of the second amended final judgment.

   We review de novo a trial court's decision regarding judgment interest. <u>See</u> <u>Santini v. Cleveland Clinic Fla.</u>, 65 So. 3d 22, 34 (Fla. 4th DCA 2011).

---

[6]We note that R.J. Reynolds also made the argument that under both the pre-1999 or post-1999 versions of section 768.73, Florida Statutes, the three-to-one cap on punitive damages should be measured by the compensatory award as reduced for comparative fault. However, because this court has recently rejected the argument that a compensatory award should be reduced in that manner, this argument too fails. <u>See</u> <u>Boatright</u>, 217 So. 3d at 171-72.

- 13 -

Generally, interest on a money judgment begins accruing on the date of judgment. See § 55.03(3), Fla. Stat. (2012); Amerace Corp. v. Stallings, 823 So. 2d 110, 114 (Fla. 2002); Shoemaker v. Sliger, 187 So. 3d 863, 865 (Fla. 5th DCA 2016). Where a party appeals a final judgment and only the amount of the award is modified after the appeal, the accrual date for interest does not change and the interest accrues from the date of the original judgment as modified. See Shoemaker, 187 So. 3d at 865-66; St. Cloud Utils. v. Moore, 355 So. 2d 446, 447-48 (Fla. 4th DCA 1978).

R.J. Reynolds relies heavily on Guy v. Kight, 431 So. 2d 653, 656 (Fla. 5th DCA 1983), arguing that our reversal in the first appeal necessarily required further judicial labor below, thereby requiring that any award of interest had to accrue from the date of the second amended final judgment. But Kight does not control this case.

Admittedly, this court "reversed" the original final judgment in the prior appeal. See Evers, 195 So. 3d at 1140-41. However, the effect of our reversal was to reverse the directed verdict on the concealment and conspiracy claims, reinstate the jury verdicts on those claims, and reinstate the punitive damages award (which was tied only to those two claims). Id. In doing so, we declined to address "certain issues" related to the punitive damages award because they had not yet been addressed by the trial court due to the entry of the directed verdict (which nullified the punitive damages award). Id. at 1141 n.2.

However, R.J. Reynolds asserts that those "certain issues" were the arguments concerning the applicability of the statutory cap and the reduction for comparative fault. Notably, those issues only relate to the amount of the final judgment. While the trial court had to decide whether the damage awards were subject to

- 14 -

reduction based either on comparative fault or due to a statutory cap, the underlying jury verdicts—entered in favor of Evers—were not disturbed. Even if R.J. Reynolds had prevailed on the comparative fault and statutory cap arguments below, the only difference between the original final judgment and the second amended final judgment would have been the amount. The fact that we used the word "reversed" in the prior appeal is not dispositive because our reversal only extended to the amount of the award and otherwise amounted to an affirmance in all other respects. See Moore, 355 So. 2d at 448 n.1 (explaining that interest should run from the date of the original judgment because although the appellate court had previously reversed the trial court judgment based on the improper application of comparative negligence and directed the trial court to enter a new judgment, the reversal only went to the amount of the award and otherwise acted as an affirmance on other issues (relying on Smith v. Goodpasture, 189 So. 2d 265, 267 (Fla. 4th DCA 1966))). Accordingly, the trial court properly awarded interest accruing from the date of the original final judgment.

## CONCLUSION

The trial court properly determined that the 1995 version of section 768.73 applied to this case. Although we conclude that R.J. Reynolds waived its argument that the 1995 version of the statute still required imposition of a three-to-one cap on the punitive damages award, we alternatively hold that the trial court properly determined that clear and convincing evidence supported the punitive damages award that exceeded the cap and that the award was not excessive. Finally, we hold that the trial court properly awarded interest as accruing from the date of the original final judgment.

Affirmed.

SILBERMAN and KELLY, JJ., Concur.