979 So.2d 961 (2008)
Marvin HOOD, et al., Appellants,
v.
Mirna M. VALLE, etc., Appellee.
No. 3D06-2991.
District Court of Appeal of Florida, Third District.
January 16, 2008.
Rehearing and Rehearing Denied May 14, 2008.
Clark Robb Mason Coulombe & Buschman; Elizabeth K. Russo, Miami, and Craig Lee Montz, for appellants.
*962 Friedin & Dobrinsky and Manuel Dobrinsky; Lauri Waldman Ross and Theresa L. Girten, Miami, for appellee.
Before COPE, SHEPHERD, and SALTER, JJ.
Rehearing and Rehearing En Banc Denied May 14, 2008.
SALTER, J.
Marvin Hood and State Farm Mutual Automobile Insurance Company appeal a jury verdict, judgment, and order denying a motion for new trial in this wrongful death case. The plaintiff below, Mirna Valle, is the sister and personal representative of the estate of Maria Valle. She also brought the lawsuit on behalf of her mother. Maria Valle died at age thirty-three as a result of an automobile collision caused by Hood while he was intoxicated.
Hood and State Farm raise two issues on appeal: misconduct by plaintiff's counsel in presenting opening statement, and the alleged non-disclosure of material information by a juror during voir dire. Finding no reversible error as to either point, we affirm the verdict and rulings below.
The trial court's rulings on the motions for mistrial and new trial on these grounds are reviewed for an abuse of discretion. Ricks v. Loyola, 822 So.2d 502, 508 (Fla. 2002); State Farm Fire & Cas. Co. v. Levine, 875 So.2d 663, 666 (Fla. 3d DCA 2004).
Opening Statement
The case was originally set for trial on both compensatory and punitive damages. Before trial, Hood pled guilty to D.U.I. manslaughter, and he was in prison when the case came to trial. Noting that the defendants were assenting to Hood's appearance in court in shackles (and concerned that this was part of a tactic to cause the jurors to think that Hood had no money), the plaintiff moved to bifurcate the compensatory and punitive damages phases, and the trial court ultimately granted that motion.
During a break between voir dire with a first panel of jurors for the compensatory damages phase and voir dire with a second panel for that phase, the parties entered into several stipulations. First, the economic damages were agreed upon. Second, the plaintiff dropped her punitive damages claim in return for a stipulation that: Hood drove the vehicle that collided with the vehicle in which Maria Valle was a passenger; the collision caused her death; Hood's blood alcohol level was .235% (and the legal limit was .08%); Hood was legally intoxicated at the time of the incident; and he was at fault at the time of the accident. Defendants also stipulated that on the night of the collision in which Valle died, Hood had been in two other accidents before that collision.
Before trial, defendants moved for an order in limine to preclude, among other things, the plaintiff's use of the word "kill" during trial. Plaintiff's counsel agreed, and the motion was granted on that point.
During opening statement, plaintiff's counsel asked rhetorically, "What kind of pain and suffering has Mrs. Valle, the mother, suffered as a result of her first child being killed in this fashion and learning about the facts and circumstances of this case?" The defense did not object to the statement or move for a mistrial based on that violation of the earlier in limine ruling.
The defense did move for a mistrial, however, when plaintiff's counsel stated later in his opening that the jurors were "the conscience of this community." The trial judge reserved ruling on the motion[1] *963 and agreed to give a curative instruction at a point to be selected by defense counsel. Defense counsel said he would let the court know later, but never did so. After the jury verdict was returned, the trial judge denied the motion for mistrial upon which he had previously reserved ruling.
During closing argument, the plaintiff suggested a range of $1.5 million to $2 million for past pain and suffering, and $2 million to $3 million for future pain and sufferinga range for total non-economic damages of between $3.5 million and $5 million. The jury awarded a total of $3.8 million, considerably closer to the low end of the range than the high end of the suggested award.
In the context of the entire case, we cannot say that the trial court abused its discretion. The "conscience of the community" comment was promptly interrupted, a curative instruction was offered, the comment was not accompanied by a request for the jury to punish Hood,[2] and the outcome does not indicate that the jury was under the influence of passion, prejudice, or gross mistake. See Pierard v. Aerospatiale Helicopter Corp., 689 So.2d 1099 (Fla. 3d DCA 1997).
Voir Dire
Hood's and State Farm's second issue is based on the alleged non-disclosure of a material matter by a venire member in the first of two panels during jury selection. That individual was selected as a juror and became the foreperson.
After the jury was discharged, the trial judge authorized the jurors and attorneys to speak with one another if they wished. According to an attorney for Hood and State Farm, the foreperson then volunteered for the first time that his father had been an alcoholic during his youth, and that his "perception of the evidence in the case had been influenced by that fact." The appellants maintain that the foreperson should have disclosed his father's alcoholism in response to some of the questions asked during jury selection.
Hood and State Farm assert that prospective jurors were questioned about whether "anything about drinking" might affect their consideration of the D.U.I.-related wrongful death case. Certain panel members responded to that general question by stating that they would be outraged if someone was driving drunk and killed a member of the panel member's family. The person ultimately selected as foreperson of the jury responded in a more neutral way, according to the appellants, comparing the negligence involved in driving while intoxicated to the negligence inherent in driving while talking on a cell phone.
Shortly after that, all of the members of that first venire were addressed by defense counsel as follows: "I want to move now to alcohol in general and people's feelings about that and their experience. Does anybody have any strong feelings about people who drink? Anyone else have strong feelings about that?" (emphasis added).
Hood and State Farm argue that the venire member should have disclosed then the material fact that his father was an alcoholic for some portion of the venire member's youth. We disagree. First, neither the first venire as a whole nor the foreperson in particular was asked during jury selection whether a parent was or had *964 been an alcoholic.[3] Second, the general question to the first venire regarding "strong feelings about people who drink" was ultimately addressed to "anyone else," because the foreperson had already responded to the question of whether he would be "outraged" by losing a family member in an accident caused by an intoxicated driver. The key to the establishment of a prejudicial concealment of information sufficient to invoke De La Rosa[4] is a clear, direct question requiring a response by the venire member. No such question was posed here.
The second panel was asked questions that were more direct and which elicited a discussion on the topic of family members with substance abuse issues. Two members of that venire responded that their fathers had been alcoholics. But as these questions were asked, the previously-questioned first venire members (sitting separately) had no reason to believe that they were to participate in the questioning of the second panel, or that they had some duty to supplement their own previous answers in response to that later questioning. No member of the first panel, including the subject juror, responded to the questions addressed to the second panel. We do not find any indication that the juror in question concealed information during that questioning, and we find no abuse of discretion by the trial court in denying the appellants' motions for a juror interview or new trial.
Affirmed.
NOTES
[1] The trial judge invited both sides to "come up with any cases" on the question of whether the use of the phrase "conscience of the community" in opening statement required a mistrial. Neither side presented any such cases or other research on the point.
[2] Indeed, in closing argument, the defense portrayed Hood as a man who had already been punished and suggested that a large verdict would just be "more punishment."
[3] In fact, before questioning the subject juror during the voir dire of the first panel, defense counsel made it clear that he was not asking about family members. This was done after a sidebar in which counsel and the court discussed the potential "golden rule" problem with such questions.
[4] De La Rosa v. Zequeira, 659 So.2d 239 (Fla. 1995).