ALTENBERND, Judge.
 

 Michael T. Dery, Jr., appeals his conviction for first-degree murder and the resulting sentence of life imprisonment. The evidence against him was primarily, if not exclusively, circumstantial. The forensic science skills of the lead detective, a medical examiner, and a DNA expert were a major feature of the State’s case. A juror, who did not reveal that she had any background in forensic sciences during voir dire, and who appeared simply to be a bus driver in her mid-fifties, admitted during the second day of trial that she had taken a seventeen-week course in forensic science over the internet and that her instructor had been the detective who was the lead detective in this case. The trial court refused Mr. Dery’s request that one of two alternate jurors replace this juror and denied a motion for new trial on this same basis after the jury returned a verdict of guilty as charged. We conclude that the trial court was required to exercise its discretion in a manner that would have prevented this juror from participating in the deliberations and conclude that Mr. Dery is entitled to a new trial in light of these circumstances. Accordingly, we reverse the judgment and sentence and remand for a new trial.
 

 At approximately 6 a.m. on October 4, 2002, someone strangled Tamara Lank with an automobile radio installation cord and dumped her naked body in a field at the end of a dead-end street in Pinellas County, Florida. Ms. Lank was a prostitute who was addicted to crack cocaine and lived in a hotel with another prostitute and two men. At 2 a.m. that morning, she had earned enough money to buy crack cocaine and had returned to the hotel. By 5 a.m., she apparently needed more and returned to the street.
 
 [1]
 
 Thereafter, she was never seen alive by any witness. A jogger found her body at approximately 7 a.m.
 

 The Pinellas County Sheriffs Office thoroughly investigated the crime scene, and a medical examiner performed an autopsy on Ms. Lank’s body. DNA samples were obtained from scrapings under her fingernails, as well as from her private areas. The samples revealed unknown male DNA. No suspect was identified at the time of this investigation.
 

 In 2005, the Sheriffs Office obtained information that Mr. Dery’s DNA was a high probability match for the DNA obtained from the samples.
 
 [2]
 
 A detective interviewed him, claiming to be investigating a “murder theft ring.” Mr. Dery denied knowing Ms. Lank, could not identify her photograph, and denied having sex with her. Further investigation indicated that he had access to a roommate’s tool box near the time of the murder and that the box contained an automobile radio installation cord. He also lived in the general vicinity of the crime. Mr. Dery was indicted by a grand jury and charged with the first-degree murder of Ms. Lank.
 

 At trial, the State maintained that Mr. Dery had had sexual intercourse with Ms. Lank at an unknown location and then had immediately strangled her and dumped her body, where it was found by the jogger. Mr. Dery did not testify, but his counsel’s theory was that Mr. Dery was
 
 *254
 
 merely Ms. Lank’s last customer and that she must have been killed by someone else after Mr. Dery left. The State’s evidence that Mr. Dery was the person who had murdered Ms. Lank was obviously very circumstantial. It depended extensively on the investigation of the lead detective and on other forensic evidence provided by the medical examiner, a DNA expert, and other witnesses. On appeal, Mr. Dery has argued that he was entitled to a judgment of acquittal. We reject that argument, but the circumstantial nature of the evidence in this case creates a context in which the error on which we reverse is much more likely to constitute an abuse of discretion.
 

 During voir dire, the State questioned the prospective jurors about their knowledge of DNA, engaging in a discussion with the panel about their knowledge of the various uses of DNA. The State asked, “I guess the question is this: Anybody feel or anybody have specific knowledge about DNA? Because you’re interested, you read an article about it, or you have a particular interest in it.” One prospective juror responded that he knew about DNA “just through education.” Juror # 8 said nothing. As far as the parties knew, this juror was a female bus driver in her mid-fifties. Both sides left her on the jury.
 

 After the lead detective testified, juror # 8 indicated that she recognized the witness. The court interviewed the juror. In the process of determining her connection to the detective, the court established that she had taken a seventeen-week course in forensic science several years earlier. It was an internet course provided by a community college. Juror # 8 emphasized that she had had no direct contact with the detective and had not appreciated that the detective was her former instructor until he took the stand.
 

 Mr. Dery did not move for a mistrial. He merely moved to have juror # 8 removed from the jury with either of the two available alternate jurors substituted in her place. The trial court denied this motion, focusing primarily on the limited personal contact between the juror and the detective. For purposes of this opinion, we assume that the juror had no reason to disclose that she knew the detective during voir dire and that her limited connection to this witness would not be a basis that required the trial court to remove her from the panel prior to deliberations.
 

 The primary concern in this case is that juror #8 did not disclose that she had taken a course in forensic science, including the subject of DNA, when the State’s questions during voir dire clearly required her to disclose this training. A juror, who appeared from voir dire to have no training or interests that would affect her service, suddenly revealed mid-trial that she had a sufficiently serious interest in forensic science to take a course on the subject when she was approximately fifty years old. Given that most of the State’s evidence was based on forensic sciences, Mr. Dery’s attorney was entirely credible when he represented that he would, if necessary, have used a peremptory challenge to remove this juror if she had properly revealed this training during voir dire.
 

 It is well established that a trial court has the discretion to remove a juror and use an acceptable alternate juror when the court determines mid-trial that the juror was not candid during voir dire.
 
 See, e.g., Wilson v. State,
 
 608 So.2d 842, 843 (Fla. 3d DCA 1992) (removing juror who failed to disclose her ill feelings toward the state attorney’s office during voir dire);
 
 State v. Tresvant,
 
 359 So.2d 524, 526 (Fla. 3d DCA 1978) (removing juror who was not candid about the number of times she had been arrested). The closer ques
 
 *255
 
 tion is identifying the circumstances under which a trial court abuses its discretion by refusing to remove a juror. We can look to
 
 De La Rosa v. Zequeira,
 
 659 So.2d 239 (Fla.1995), for guidance in answering this question. In
 
 De La Rosa,
 
 the Florida Supreme Court outlined a three-part test to use in determining when a juror’s failure to disclose information during voir dire warrants a new trial.
 
 Id.
 
 at 241. “First, the complaining party must establish that the information is relevant and material to jury service in the case. Second, that the juror concealed the information during questioning. Lastly, that the failure to disclose the information was not attributable to the complaining party’s lack of diligence.”
 
 Id.
 

 Relying on
 
 De La Rosa,
 
 the Fifth District in
 
 Lebron v. State
 
 held that the defendant was entitled to a new trial when a juror failed to disclose that the victim of the crime was his friend. 724 So.2d 1208 (Fla. 5th DCA 1998). During voir dire the trial court had asked the potential jurors if they knew anything about the case and if they knew the defendant.
 
 Id.
 
 at 1209. None of the jurors indicated they knew the defendant, although some had indicated they knew about the case. The juror at issue, however, did not admit knowing anything about the case.
 
 Id.
 
 The Fifth District concluded that his failure to disclose his knowledge “constituted prejudicial juror misconduct requiring reversal.”
 
 Id.
 
 at 1210.
 

 This case is in line with
 
 De La Rosa
 
 and
 
 Lebron.
 
 Because the State’s case heavily relied on forensic science, a juror’s education and knowledge about it was relevant and material to his or her service on the jury. Here, juror # 8 had specialized knowledge about DNA stemming from the course she took in forensic science. Instead of admitting that she had taken a course on the subject, the juror concealed her knowledge. Her failure to disclose this knowledge cannot be attributed to a lack of diligence on Mr. Der/s part because the State expressly asked the jury panel whether any of them had any specific knowledge about DNA and Mr. Dery had no reason to inquire further after the juror failed to indicate her training in the subject. As a result, Mr. Dery was prevented from exercising a peremptory or for-cause challenge to strike her from the jury during voir dire and, thus, was prejudiced by her nondisclosure.
 

 When Mr. Dery did discover the juror’s specialized knowledge about DNA, he promptly sought to replace her with an alternate juror. There were two alternate jurors on the panel. These alternate jurors were still available when the jury was sent to deliberate. The trial court released these alternate jurors when there was little or no reason why either one of them could not have deliberated in the place of juror # 8. Therefore, we conclude that the trial court abused its discretion when it refused to replace the juror with an alternate. As such, we reverse Mr. Dery’s conviction and sentence and remand for a new trial.
 

 Reversed and remanded.
 

 DAVIS and CRENSHAW, JJ., Concur.
 

 [1]
 

 . Time estimates at trial varied considerably, but these discrepancies are not important for our opinion.
 

 [2]
 

 . Mr. Dery had several prior convictions for the sale and possession of cocaine in Pinellas County. Shortly before this murder, he had been incarcerated. Presumably his DNA was available due to his criminal record.