IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

R.J. REYNOLDS TOBACCO
COMPANY and PHILIP
MORRIS USA INC.,

     Appellants,

v.                                                                    CASE NO. 1D15-4197

ANDY R. ALLEN SR., as
Personal Representative for the
Estate of PATRICIA L. ALLEN,

     Appellee.

_____/

Opinion filed October 18, 2017.

An appeal from the Circuit Court for Duval County.
Waddell A. Wallace, Judge.

Robert B. Parrish, David C. Reeves, and Jeffrey A. Yarbrough of Moseley, Prichard, Parrish, Knight & Jones, Jacksonville, for Appellant R.J. Reynolds Tobacco Company.

Geoffrey J. Michael of Arnold & Porter LLP, Washington, DC, for Appellant Philip Morris USA Inc.

Celene H. Humphries, Steven L. Brannock, Philip J. Padovano, Maegen P. Luka, and Thomas J. Seider of Brannock & Humphries, Tampa; Gregory D. Prysock and Katy M. Massa of Morgan & Morgan, P.A., Jacksonville, for Appellee.


ON MOTION FOR REHEARING

BILBREY, J.

We grant rehearing on the court's own motion, withdraw our previous opinion issued February 24, 2017, and substitute this opinion in its place. In this Engle-progeny case,[1] Appellants raise four issues in their challenge to the final judgment which awarded Appellee $3,094,000 in compensatory damages, jointly and severally, and awarded Appellee $7,755,415 in punitive damages against each Appellant. Finding no error we affirm.

**Allegations of Juror Misconduct**

Appellants first contend that the trial court erred in not dismissing a juror during trial or for not granting the Appellants' post-trial motion for new trial based on the juror's alleged failure to disclose bias against tobacco companies during jury selection. The parties agree that the trial court's denial of a motion to dismiss a juror and denial of new trial based on allegation of juror concealment of bias are reviewed for abuse of the trial court's discretion. Villalobos v. State, 143 So. 3d 1042, 1046 (Fla. 3d DCA 2013). "Indeed, Florida courts give great deference to such decisions because trial judges are in the unique position to evaluate the practices of the attorneys during voir dire and to determine what factors were material in jury selection." Morgan v. Milton, 105 So. 3d 545, 549 (Fla. 1st DCA 2012).

---

[1] Engle v. Liggett Group, Inc., 945 So. 2d 1246 (Fla. 2006).

2

When jury selection began, the trial court explained the process to the panel of prospective jurors, including explaining a juror questionnaire prepared by the Appellants. The court asked the jurors "to take seriously the questionnaire and answer the questions as truthfully and fully as you can." Prospective juror Michael Taylor completed his questionnaire. Mr. Taylor checked the areas in which he had worked or received training or education, including "Tobacco/Cigarette Industry," "Addiction or substance abuse," and "Smoking cessation." In response to the request to "explain," Mr. Taylor wrote "Tobacco former smoker, substance tobacco" and "ex-smoker 28 years/5 clean." In response to a question regarding his "smoking status," Mr. Taylor circled "Former Smoker." He gave details of his former smoking behaviors, including his start at age 13, the 28 years he was a smoker, and that he tried to quit "many" times. He also described his family's history of smoking, including the particular relatives who smoked, what brands they smoked, and the heavy amounts that they smoked. Mr. Taylor indicated in the questionnaire that he thought his minor son suffered from smoking-related asthma. When asked in question 30 his opinion of smokers, Mr. Taylor wrote: "Addicted but accountable for their choices." In answer to question 31 about his opinion of "a lawsuit against a tobacco company," Mr. Taylor wrote that he "must know the facts to judge." When asked in question 32 his "opinion, if any, of cigarette companies," Mr. Taylor wrote, "they are a business."

Jury selection spanned three days. The parties point to only one excerpt in the transcripts of the jury selection showing Mr. Taylor being questioned individually. When asked by Appellee's trial counsel about his smoking history, Mr. Taylor replied, "I smoked 28 years, addicted to nicotine, quit on Chantix 2008. Smoked a pack a day." Mr. Taylor was never individually questioned by Appellants' trial counsel. No preemptory or for cause challenges were directed at Mr. Taylor, and he was selected as a member of the jury.

On the fourth day of trial Appellants' trial counsel raised the allegations of juror misconduct by Mr. Taylor in a written motion seeking to have him removed from the jury. The motion alleged "personal and deep-seated antagonism and bias against Defendants" based on social media postings Mr. Taylor had purportedly made on the internet in the past. The trial continued, and a few days later counsel for Appellee filed a written response. The trial court heard argument on the motion outside the presence of the jury, and after taking the matter under advisement, denied the motion to dismiss Mr. Taylor from the jury. After the jury returned verdicts for compensatory and then punitive damages for the Appellee, the trial court entered a detailed order setting forth the basis for denying the motion to remove Mr. Taylor.

After the jury verdicts, the Appellants moved for a new trial based on the same allegations raised in their motion to dismiss Mr. Taylor from the jury. After

4

receiving a response from Appellee and holding a hearing on the motion for new trial, the trial court denied that motion. At no time did Appellants seek to further voir dire or interview Mr. Taylor regarding the allegations of bias.

The trial court thoroughly analyzed this issue in its orders denying the dismissal of Mr. Taylor and denying a new trial. The three-part standard the trial court correctly used was given in De La Rosa v. Zequeira, 659 So. 2d 239 (Fla. 1995). In De La Rosa, the Florida Supreme Court stated the test for whether a new trial is warranted based on juror concealment, "First, the complaining party must establish that the information is relevant and material to jury service in the case. Second, that the juror concealed the information during questioning. Lastly, that the failure to disclose the information was not attributable to the complaining party's lack of diligence." Id. at 241. The first prong of the De La Rosa standard was undisputed below, and the trial court found that the postings were relevant and material to Mr. Taylor's jury service.[2]

As to the second prong of the De La Rosa standard, the trial court found that

---

[2] How the trial court knew the postings were Mr. Taylor's, as opposed to someone else's, without interviewing him is therefore not an issue for our consideration. Additionally, the remoteness in time of the postings, one over a year and the other over five years before the trial, and whether they remained material is not for our consideration. Cf. Leavitt v. Krogen, 752 So. 2d 730 (Fla. 3d DCA 2000) (holding non-disclosure of an over ten year old claim not material). Finally, the post-trial postings mentioned in the dissent do not alter the test. Even if the post-trial postings were relevant and material, the other two prongs of the De La Rosa test must be met.

5

Mr. Taylor did not conceal any bias against the Appellants. In the order denying Appellants' motion to dismiss Mr. Taylor, the trial court stated,

> First, Juror Taylor's response that cigarette smokers are "addicted but accountable for their choices" is not inconsistent with his social media posts. In both posts Juror Taylor discussed his overcoming of smoking addiction. Similarly, his responses to the other two questionnaire questions are not contradictory of his social media posts. The Defendants appear to argue that Juror Taylor was requested to elaborate more in his response to the questionnaire. However, questions 30-32 of the juror questionnaire are subjective questions that are broad enough to summon a wide array of responses. The questions certainly do not clearly or squarely ask for the detailed level of information present in Juror Taylor's social media posts. The questions do not specifically require the jurors to disclose whether they harbor any negative feelings towards tobacco companies.

The questionnaire did not ask unequivocal questions regarding bias, and Mr. Taylor did not provide unequivocal answers, which distinguishes the facts here from Roberts ex rel. Estate of Roberts v. Tejada, 814 So. 2d 334 (Fla. 2002), cited by Appellants. In Roberts, the Florida Supreme Court required a new trial where a juror failed to disclose that she had been involved in prior litigation when asked if she had ever been a party to a lawsuit. See also De La Rosa, 659 So. 2d at 241. The questions and answers at issue here were not the clear, black or white, yes or no, type of questions at issue in Roberts. Mr. Taylor cannot be blamed for "not being more forthcoming given the very basic questions asked." Gamsen v. State Farm Fire & Cas. Co., 68 So. 3d 290, 294 (Fla. 4th DCA 2011); see also Hood v.

6

Valle, 979 So. 2d 961 (Fla. 3d DCA 2008).[3]  The trial court did not abuse its discretion in finding that the second prong of the De La Rosa standard was not met.

The trial court also found that there was insufficient due diligence exercised by Appellants to meet the third prong of the De La Rosa standard.  As the Court explained in Roberts, "resolution of this 'diligence' issue requires a factual determination regarding whether the explanations provided by the judge and counsel regarding the kinds of responses which were sought would reasonably have been understood by the subject jurors to encompass the undisclosed information."  814 So. 2d at 343.  In making the factual determination, in the order denying the dismissal of Mr. Taylor from the jury, the trial court found,

> [Q]uestions 30-32 of the juror questionnaire were broad enough to elicit a wide array of responses.  Juror Taylor's responses to these three questions raised numerous issues that would logically call for follow-up questions.  Moreover, Juror Taylor indicated on the questionnaire that he was a former heavy smoker of twenty-eight years, and had been "clean" for the past five years.  He also stated that his father and both grandfathers were lifelong heavy smokers, leading to health issues.  Juror Taylor indicated on the questionnaire that he attributed his son's asthma to smoking-related causes.

---

[3] If Mr. Taylor had intended to be a stealth juror leading a runaway jury, he did a poor job of concealing it by providing answers in the questionnaire that he was a 28-year former smoker now "clean" for five years, mentioning his many attempts to quit smoking, and acknowledging his family members who smoked or who he believed were adversely affected by smoking.  Cf. John Grisham, The Runaway Jury (1996) (a work of fiction where a prospective juror actively hid his past and hid strongly held beliefs in order to be selected as a juror and influence a substantial verdict against a tobacco company).

7

The trial court also mentioned Mr. Taylor's verbal response detailing his smoking history.

The trial court found that due diligence required follow-up questions to Mr. Taylor, a long-time smoker now five years "clean," to examine whether he "harbored no ill-feelings toward tobacco companies." Due diligence is lacking when "at best, an ambiguity may exist which was not explored." Lugo v. State, 2 So. 3d 1, 15 (Fla. 2008). The trial court noted that it did not impose time limits on the voir dire. The trial court concluded that Appellants' likely strategic decision not to question Mr. Taylor did not satisfy due diligence.

Given Mr. Taylor's disclosed personal and family history with cigarette smoking, along with his answers to questions 30 through 32 in the questionnaire, we find no abuse of discretion in the trial court determining that Mr. Taylor should have been asked clear and direct questions during jury selection regarding any bias against tobacco companies. As two prongs of the De La Rosa standard are lacking, there was no error in the trial court's refusal to dismiss Mr. Taylor or grant a new trial based on his serving on the jury.

## Comparative Fault

Appellants next argue that the trial court erred by not reducing the compensatory damages following the jury's finding that the decedent was seventy percent at fault. Although there is a split of authority among the Florida district

8

courts, this court held in R.J. Reynolds Tobacco Co. v. Sury, 118 So. 3d 849 (Fla. 1st DCA 2013), that apportionment of fault is not required by section 768.81, Florida Statutes, where a jury finds — as it found at trial here — that a defendant committed intentional torts of fraudulent concealment and conspiracy to fraudulently conceal. In R.J. Reynolds Tobacco Co. v. Schoeff, 178 So. 3d 487 (Fla. 4th DCA 2015), rev. granted, Schoeff v. R.J. Reynolds Tobacco Co., 2016 WL 3127698 (Fla. May 26, 2016), the Fourth District held contrary to Sury that fault should be apportioned in what that court considered to be a products liability action. We are obligated to follow Sury and in doing so hold that the trial court did not err when it refused to apportion fault.[4]

## Punitive Damages

Appellants' third issue is that the trial court applied the incorrect version of the punitive damages statutes resulting in an incorrect jury instruction on the standard for awarding punitive damages and an award of punitive damages in excess of that permitted by law. Chapter 99-225, section 22, Laws of Florida, amended section 768.72(2)(b), Florida Statutes, to require a "conscious disregard" for the safety of others rather than the previous standard of "reckless disregard," to

---

[4] We also distinguish the situation here from R.J. Reynolds Tobacco Co. v. Hiott, 129 So. 3d 473 (Fla. 1st DCA 2014). Unlike in Hiott, the jury here was not misled by the trial court or counsel regarding the reduction of compensatory damages. In fact the jurors here were repeatedly told that if they returned a verdict on the two fraud counts then damages could not be reduced by the percentage of fault attributed to the decedent.

9

allow for an award of punitive damages. Chapter 99-225, section 23, amended section 768.73, Florida Statutes, to impose a stricter cap on punitive damages and to require findings by the jury to overcome that cap. Appellants contend the post-1999 version of the statute applies here and that the trial court committed error by applying the earlier version of the statute.

Typically, the applicable version of a statute is the one "in effect when the cause of action arose." D'Anglo v. Fitzmaurice, 863 So. 2d 311, 314 n.9 (Fla. 2003) (citing Basel v. McFarland & Sons, Inc., 815 So. 2d 687 (Fla. 5th DCA 2002)); §§ 768.72(4) & 768.73(5), Fla. Stat. In many wrongful death actions, the cause of action accrues on the date of a decedent's death. Nationwide Mut. Fire Ins. Co. v. MacDonald, 645 So. 2d 1057 (Fla. 4th DCA 1994). However, Engle-progeny cases are different. Engle v. Liggett Group, Inc., 945 So. 2d 1246 (Fla. 2006); see also R.J. Reynolds Tobacco Co. v. Ciccone, 190 So. 3d 1028 (Fla. 2016) (applying manifestation rather than accrual of cause of action to establish membership in the Engle class).

To be a member of the Engle class and to take advantage of the findings in Engle, a plaintiff's (or plaintiff's decedent's) "symptoms of a tobacco-related disease or medical condition" must have manifested by November 21, 1996. Ciccone, 190 So. 3d at 1030; see also Engle, 945 So. 2d at 1275. The testimony at trial was that Mrs. Allen's chronic obstructive pulmonary disease (COPD)

10

manifested before November 21, 1996, so she qualified for the res judicata benefits of the Engle class. See Ciccone; Soffer v. R.J. Reynolds Tobacco Co., 187 So. 3d 1219, 1226-27 (Fla. 2016).[5]

Here litigation commenced on September 18, 2007, when Mrs. Allen was still living. The initial complaint alleged that Mrs. Allen was a member of the Engle class and entitled to benefit from the Engle findings. See Ciccone; Philip Morris USA, Inc. v. Douglas, 110 So. 3d 419 (Fla. 2013). The initial complaint was filed within the one-year period during which the Florida Supreme Court allowed individual claims following the decertification of the class in Engle. 945 So. 2d at 1277. Mrs. Allen died on February 24, 2009, and Appellee continued the litigation which had been commenced before her death by filing a third amended complaint with the wrongful death claim.

Section 768.20, Florida Statutes, provides guidance and states in part, "When a personal injury to the decedent results in death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate."[6]

---

[5] Even using the typical test for accrual of a cause of action for a latent or "creeping disease," the cause of action here likely accrued by September or October 1996, when Mrs. Allen was diagnosed with early COPD and recommended to undertake smoking cessation treatment. See Carter v. Brown & Williamson Tobacco Corp., 778 So. 2d 932, 936-37 (Fla. 2000); Ciccone, 190 So. 3d at 1042-46 (Polston, J., dissenting). A follow-up exam on November 18, 1996, specifically tied her early COPD to continued tobacco use.

[6] Other than the adoption of gender neutral language in 1997, this statute has not

11

When Mrs. Allen died, her personal injury case did not "self-destruct like the secret message on a rerun of 'Mission Impossible.'" Niemi v. Brown & Williamson Tobacco Co., 862 So. 2d 31, 33 (Fla. 2d DCA 2003). Instead it abated until a personal representative was appointed and the existing suit was amended to add the wrongful death claim. Appellee was not required to file a new suit, but instead was allowed to proceed in the same suit initiated by Mrs. Allen. See Capone v. Philip Morris USA, Inc., 116 So. 3d 363 (Fla. 2013). Just as the wrongful death action was allowed to relate back to date of the Engle class for statute of limitations purposes, the applicable statutory law also relates back to the Engle class. See In re: Engle Cases, 45 F. Supp. 3d 1351 (M.D. Fla. 2014) (discussing relation back of wrongful death action following plaintiff/smoker's death). This date had to be before November 21, 1996, so the post-1999 revisions to the punitive damages statutes do not apply.

In Schoeff, the Fourth District had occasion to consider which version of the comparative fault statute applied to the wrongful death action. 178 So. 3d at 492 n.3. Although that case began as a wrongful death action, the Schoeff court held that the version of the statute in effect at the time the decedent was diagnosed with lung cancer was the applicable version, since that was when the cause of action accrued. Id. That logic is even more persuasive here where the case began with

been altered since it was adopted in Chapter 72-35, Laws of Florida; so the applicable year of section 768.20 is not at issue.

12

Mrs. Allen as a plaintiff and was converted to a wrongful death action after she died. After her causes of action accrued, Mrs. Allen had a substantive right to seek punitive damages under the then-existing standard. See Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352, 1358 (Fla. 1994). Application of the post-1999 amendments to the punitive damages statute to Appellee's derivative claim would impair those substantive rights. Id.; see also Celotex Corp. v. Meehan, 523 So. 2d 141, 147 (Fla. 1988) ("wrongful death action is derivative of the injured person's right, while living, to recover personal injury") (citing Variety Children's Hospital v. Perkins, 445 So. 2d 1010 (Fla. 1983)).[7]

### Due Process

Appellants' final issue is raised only for preservation purposes, that the use of the Engle findings in the trial court violated due process. This argument has been definitively rejected by the Florida Supreme Court in Douglas. 110 So. 3d at 430-31.

### Conclusion

---

[7] Additionally it would arguably be inequitable to subject the Appellee to the higher burden and potentially lower damages of the revised punitive damages statutes, when Mrs. Allen would have proceeded under the old statutes had she survived. The Florida Supreme Court's holding in Martin v. United Security Services, Inc., 314 So. 2d 765 (Fla. 1975), one of the first cases interpreting the then new Wrongful Death Act, is instructive. There the Court allowed punitive damages in a wrongful death case holding, "We see no reason why United Security should escape possible liability for punitive damages merely because its employee killed rather than injured her." Id. at 772.

13

Having determined that no error was committed by the trial court, the judgment is affirmed.

AFFIRMED.

WINOKUR, J., CONCURS IN PART AND CONCURS IN RESULT ONLY WITH OPINION; OSTERHAUS, J., DISSENTS WITH OPINION.

WINOKUR, J., concurring in part and concurring in result only.

I concur in the majority opinion with respect to all issues except the juror misconduct issue. With regard to the juror misconduct issue, I concur in result only.

In their Motion for Rehearing En Banc or Certification to the Florida Supreme Court, Appellants argue that the decision here "establishes an unreasonable standard for uncovering juror bias that would turn voir dire into a long series of hostile questions by counsel worried about being faulted for displaying insufficient precision and diligence." This argument has impelled me to explain why I vote to affirm with regard to the juror concealment issue.

Prospective jurors were asked by questionnaire for their "opinion, if any of cigarette companies." Juror Taylor gave a bland response: "they are a business," a fact rather than an opinion. After trial started, Appellants uncovered social media postings from Taylor that reflected antagonism toward tobacco companies. One of these messages was five and one-half years old, and the other was posted five months prior to trial. Appellants' argument, and the dissenting opinion, rests squarely on the presumption that the posts reflected precisely the opinions of Taylor at the time of jury selection. And because those opinions are inconsistent with Taylor's answers at jury selection, Appellants conclude that he was guilty of concealing his "true opinions" of tobacco companies.

Experience concerning personal opinions belies this argument. Even if these messages accurately reflected Taylor's opinion at the time he wrote them, nothing shows that they reflected his views at the time of trial, other than a presumption that his opinion was unchanged. "The foolish and the dead alone never change their opinion." James Russell Lowell, *My Study Windows* 166 (Boston: J.R. Osgood & Company 1874).

For this reason, I cannot subscribe to the view that cases where a prospective juror has given false factual information during jury selection control here. For instance, the jurors in *De La Rosa v. Zequeira*, 659 So. 2d 239 (Fla. 1995), were asked whether they or family members or close friends had been a party to a lawsuit. The answer to this question is either "yes" or "no," and the answer is either true or false. A prospective juror who fails to answer this question truthfully is guilty of concealment. I respectfully disagree with the dissent that the question, "[w]hat, if any, opinion do you have of cigarette companies[?]," is so "simple" and "straightforward" that it necessarily calls for the same type of certain, verifiable answer as the one to the question about prior lawsuits. I do not believe we should presume, as Appellants do, that any past expression of opinion necessarily reflects a "true opinion" and that anything contrary to that past expression constitutes concealment of that true opinion.

The dissent finds the request for an opinion about tobacco companies to be a

16

"simple, straightforward question" that "[e]ven grade-schoolers understand." *Infra* at 25-26.  To demonstrate, the dissent proposes responses to opinion inquiries such as "I love my job" or "I hate the Gators."  I do not share the dissent's contention that personal opinions can always be expressed with such simplicity and certainty. It leaves no room for mixed feelings, evolving views, or even the possibility that a person might be more circumspect in expressing his opinions when giving sworn answers in jury selection than he is writing Facebook posts.

A juror can certainly be dismissed for concealing an opinion during jury selection.  But dredging up past communications, declaring them "true opinion," and comparing the past communication with answers at jury selection does not necessarily demonstrate concealment.  The surest way to determine whether Taylor continued to hold the views expressed in the online messages would have been to ask him.  Appellants never asked to interview Taylor after they discovered his messages.  Instead, they asked this Court to presume that the opinions expressed in these prior messages reflected Taylor's views at the time of trial, and then fault him for concealing those views.[8]  I am unwilling to make this presumption.

Florida Rule of Civil Procedure 1.431(h) permits post-verdict juror

---

[8] Of course, one can argue based on the available circumstantial evidence that Taylor's questionnaire answers did in fact conceal his "true opinion."  But given the capricious nature of personal opinions, a party asserting that new information casts doubt on a juror's expression of opinion at jury selection should be required to interview the juror.

interviews when the party has grounds for a legal challenge to a verdict. "Where there are reasonable grounds to believe concealment of a material fact has taken place, a party is entitled to conduct a jury interview." *Singletary v. Lewis*, 584 So. 2d 634, 636 (Fla. 1st DCA 1991). A court abuses its discretion in denying a juror interview when a party comes forward with information that a juror concealed relevant information at jury selection. *See e.g. Westgate Palace, LLC v. Parr*, 216 So. 3d 747 (Fla. 5th DCA 2017). While Rule 1.431(h) specifically refers to post-verdict interviews, this procedure should have been employed here. *See Villalobos v. State*, 143 So. 3d 1042, 1046 n.5 (Fla. 3d DCA 2014) ("In the more common scenario, the juror's nondisclosure of information is not discovered until after the trial, resulting in a motion for new trial. Here, the nondisclosure was discovered during the trial itself, and the issue is whether the court erred in not dismissing the juror upon discovery of the undisclosed information. Under either scenario, however, the analysis remains the same.").

I find Appellants' failure to attempt to confront Taylor after they discovered those online messages far more relevant in affirming the trial court than their failure to question him more thoroughly at voir dire.[9] In order to allay any

---

[9] I recognize that the trial court did not rely on this basis in denying Appellants' motion to dismiss Taylor, but we are obligated to affirm "if there is any basis which would support the judgment in the record." *Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644 (Fla. 1999). And the fact that Allen has never made this argument on appeal does not alter this conclusion. *See State v. Pitts*, 936 So. 2d 1111, 1133 (Fla. 2d DCA 2006) (explaining that "tipsy-

18

concerns that the opinion here places additional burdens on litigants during jury selection to uncover bias, I do not join Judge Bilbrey's opinion on this issue. I do, however, vote to affirm on all issues.

---

coachman" rule applies "even if the specific basis for affirmance has not been articulated by the appellee").

OSTERHAUS, J. dissenting.

I would reverse for a new trial because the foreman of the jury did not disclose his contempt for cigarette companies when asked directly during voir dire. When asked during voir dire, "What, if any, opinion do you have of cigarette companies, including [Defendants]?" the juror answered only: "[T]hey are a business." What the juror didn't reveal was his history of posting sharply negative views about tobacco companies on social media. Online, he called them leeches and slaveholders who keep addicts in chains. Appellants only discovered the jury foreman's strong views about them after the trial began. At which point, they immediately sought to remove him and empanel the juror alternate. But the trial court denied the motion, as well as Appellants' subsequent motion for a new trial.

Parties have a constitutional right to an impartial jury. Every prospective juror has a duty to fully and truthfully answer questions asked of them during voir dire. Venire members must not falsify any fact or conceal material information. Because here, the foreman of the jury concealed his negative opinions of cigarette companies when directly asked for his opinion of them during voir dire, I would reverse and remand for a new trial.

20

I.

A.

Our tradition of trial by jury "necessarily contemplates an impartial jury drawn from a cross-section of the community." State v. Silva, 259 So. 2d 153, 160 (Fla. 1972). "[A]nything less than an impartial jury is the functional equivalent of no jury at all," City of Miami v. Cornett, 463 So. 2d 399, 402 (Fla. 3d DCA 1985), dismissed, 469 So. 2d 748 (Fla. 1985), and impinges a party's due process rights. Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980) ("The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases, . . . safeguard[ing] the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process.").

Courts and parties routinely vet prospective jurors with questions before the trial to "assure the right to a fair and impartial trial by qualified jurors." McCauslin v. O'Connor, 985 So. 2d 558, 560 (Fla 5th DCA 2008); Fla. R. Civ. P. 1.431. This process is called "voir dire." During voir dire, potential jurors have a "duty . . . to make full and truthful answers . . . neither falsely stating any fact, nor concealing any material matter." Roberts ex rel. Roberts v. Tejada, 814 So. 2d 334, 342 (Fla. 2002) (quoting Loftin v. Wilson, 67 So. 2d 185, 192 (Fla. 1953)).

21

"Trial counsel and their clients are entitled to assume that a prospective juror will truthfully answer the questions posed by the court or by the parties' counsel." McCauslin, 985 So. 2d at 560. Concealment or failing to answer truthfully amounts to misconduct that can be extremely prejudicial to a party's procedural rights. De La Rosa v. Zequeira, 659 So. 2d 239, 241 (Fla. 1995) (quoting Loftin, 67 So. 2d at 192 ("full knowledge of all material and relevant matters is essential to the fair and just exercise of the right to challenge either peremptorily or for cause.")).

A nondisclosure during a voir dire exam warrants a new trial under Florida law if: (1) the undisclosed information is "relevant and material to jury service in the case"; (2) the juror "concealed the information during questioning"; and (3) the juror's failure to disclose the information isn't "attributable to the complaining party's lack of diligence." De La Rosa, 659 So. 2d at 241. The failure to grant a new trial under these circumstances is reversible error. See Kelly v. Cmty. Hosp. of Palm Beaches, Inc., 818 So. 2d 469, 476 (Fla. 2002).

B.

Appellants moved to dismiss Juror Michael Taylor in this case after discovering, four days into a three-week trial in 2015, that he'd published social media comments in 2009 and 2014 expressing contempt for cigarette companies. He posted:

I quit smoking after 28 years. . . . All the time the government taxed the crap out of me to pay for dumb sh-- I never agreed to. Their excuse to avoid making tobacco companies to stop. These companies and the government are best buddies. They are both le[e]ches on the same people . . . addicts like me. Why the h---- do the uppity intellectuals think they are better than the guy at the bottom and thus tax his weakness? I think it is a sick way of easing their conscience too!!

*     *     *

Set yourself free from the people who have you addicted. Stop paying their fees just to feel normal. You do not have to quit alone. . . . The only thing you are giving up is being a slave to some rich guy who sells tobacco products. Break the chains.

(Emphasis added). Appellants argued to the trial court that Juror Taylor had concealed his posted contempt for them during voir dire despite being asked directly in a juror questionnaire. Every panel member was asked directly in a juror questionnaire for their opinion of cigarette companies. In addition, the Court admonished jurors during voir dire to "'be honest' and identify whether they had 'bad feelings . . . against [the companies]' that would affect the 'ability to be fair and impartial.'" Appellants claimed that they'd have stricken Juror Taylor for cause because of his hostility toward them, or exercised a strike (they had left one preemptory strike on the table) had they known his true views.

The trial court held a hearing on Appellants' motion to remove Juror Taylor and denied it. The trial court found that Juror Taylor's posts suggested bias against the tobacco parties. And no one disputed that his posts were both relevant and material to his jury service. But the trial court declined to dismiss Juror Taylor

because it thought clear questions hadn't been asked about his opinion of cigarette companies during voir dire; Appellants' counsel hadn't been diligent about asking the right questions. After denying the motion, Juror Taylor became the foreman of the jury. The jury found Appellants liable. And the jury awarded an eight-figure verdict to the plaintiff.

The trial court later denied Appellants' motion for a new trial, which they based not only upon the previous nondisclosures, but new online material. Post-trial posts from Juror Taylor's Facebook account gloated about the verdict, urged that news be spread about it, and called tobacco companies "liable as Satan and deserv[ing of] consequences for their actions."[10]

## II.

This appeal focuses on the last two prongs of <u>De La Rosa</u>'s three-prong test for determining when a juror should be dismissed mid-trial for concealing information during voir dire. <u>De La Rosa</u>, 659 So. 2d at 241. Appellants satisfied the first <u>De La Rosa</u> prong when the trial court recognized that Juror Taylor's pre-

---

[10] The posts specifically read:

> I have finally been released from jury duty. I was the foreman November 3 thru 26th. Tobacco trial. Awarded $18.6M to the plaintiff. (please share and inform others) . . . Tobacco companies have lied to the public for over 60 years about how bad their products are. . . . For anyone who doesn't understand how the tobacco companies can be held responsible, please re-read the above facts. . . . Those who lead others to temptation are as liable as Satan and deserve consequences for their actions as well.

trial, social media posts showed material bias against tobacco companies relevant to his service on the jury. No one challenged that particular finding and the evidence supports it.

The trial court denied Appellants' motion to remove Juror Taylor based on De La Rosa's second and third prongs. The trial court ruled that Juror Taylor did not conceal his opinions during voir dire. And it faulted Appellants for not diligently asking for Juror Taylor's negative opinions of them. But these conclusions aren't supported by the record. A juror "conceals" information where he fails to provide information "squarely asked for." Birch ex rel. Birch v. Albert, 761 So. 2d 355, 358 (Fla. 3d DCA 2000). Here, Question 32 of the juror questionnaire asked: "What, if any, opinion do you have of cigarette companies, including [Defendants]?" This question asked "squarely" for Juror Taylor's opinion of cigarette companies. But the trial court didn't think so. It found Question 32 ambiguous and "not specifically requir[ing] the jurors to disclose whether they harbor[ed] any negative feelings toward tobacco companies"; needing "[m]ore specific follow-up questions . . . for Juror Taylor to elaborate on his views regarding . . . tobacco companies"; and as not reasonably "understood . . . to encompass the scope and type of information that Juror Taylor provided in his social media posts."

But this is sheer applesauce. "What is your opinion of ____?" is a simple,

25

straightforward question that is asked, understood, and answered by virtually everyone, everyday; as in: "What is your opinion of/what do you think of [fill in the blank]—your job; your teacher; your lunch; President Trump; Lady Gaga; Justin Bieber; iPhone 7; Windows 10; Hollywood; Wall Street; the Gators; the Hurricanes; the Seminoles; and so on. Even grade-schoolers understand this question, no problem. Everyone knows that it calls for a subjective personal response about the question's subject, whatever that opinion might be; as in "I love my job," "I hate the [Gators, Hurricanes, or Seminoles] (you pick 'em)," or "School was ehh."[11] This question is particularly effective and easy to answer for someone with strong opinions about a subject, like Juror Taylor. The disclosures of other venire members prove this very point. See Roberts, 814 So. 2d at 346 ("The information disclosed by other prospective jurors may be as important in any particular inquiry by counsel, because the dynamics and context of the entire process may define the parameters of that which should be disclosed."). They gave opinions of cigarette companies like: "all Evil"; "They are all predators"; "To say

---

[11] "Ehh" is slang and has been defined as "[t]he end all be all word used by teenage males when speaking to their parents. Used as a response to questions which they do not wish to answer.

     Parent: how was school?
     Son: ehh
     Parent: did you have fun eating with your girlfriend after school?
     Son: ehh."

Http://www.urbandictionary.com/define.php?term=ehh (last visited Feb. 7, 2017).

they are the lowest form of capitalism is an insult to capitalism"; "They are responsible for pushing the sales of a deadly product"; "Deserve what the[y] get"; "They should not be able to produce such bad products that will cause harm to a human being"; "I believe they knowingly misled the public about effects of smoking that they knew were evident"; and "Big business that does not care the damage they do to those that are addicted to their product." Appellants could effectively evaluate the fitness and prejudice of these prospective jurors because of their truthful answers. Juror Taylor possessed similarly strong negative opinions, but he concealed them. He didn't answer Question 32 as due process demanded and his performance cannot credibly be blamed on the question.

Juror Taylor had a responsibility to give his opinion of cigarette companies truthfully and fully, without "concealing any material matter." Roberts, 814 So. 2d at 342 (quoting Loftin v. Wilson, 67 So. 2d 185, 192 (Fla. 1953)). See also Minnis v. Jackson, 330 So. 2d 847, 848 (Fla. 3d DCA 1976) ("The well established rule is that the failure of a juror to honestly answer material questions propounded to him on voir dire constitutes bad faith requiring his disqualification from serving on the jury in the case."). The trial court had instructed the venire to answer all questions "as truthfully and fully" as possible. It had also explained that it was "looking for" prospective jurors with ill feelings toward tobacco companies or other "preexisting" biases. At one point, the trial court also interrupted defense counsel

27

between questions to individual members of the venire to make sure that prospective jurors knew exactly the sort of information they were required to disclose.  The trial court explained that the "whole idea is to find out if you have preexisting views . . . in your background [that] would affect your ability to be fair and impartial."  For example, "if you [have] some real bad feelings that you've had for a long time against [cigarette] companies [that will always] be in the back of your mind."

Against this backdrop, Appellants were "entitled to assume" that Juror Taylor gave his "opinion . . . of cigarette companies" fully and truthfully, just as he was asked.  McCauslin, 985 So. 2d at 560.  But he didn't.  Tobacco companies weren't just "a business" to Juror Taylor, as he answered at voir dire.  His online readers knew that he really thought of them as slaveholders and leeches, essentially as businesses that owned, consumed, and sucked the blood of other people for their own advantage.[12]  His aspersion easily ranks among the worst opinions one can have of something.  And courts have found juror concealment in much closer cases than this one.  See, e.g., Nicholas v. State, 47 So. 3d 297, 301 (finding juror concealment where a juror knew two witnesses but didn't respond when the court said, "If there's something you think that we need to know about your background

---

[12] See Meriam-Webster Online Dictionary, https://www.merriam-webster.com/ dictionary/leech (last visited Feb. 7, 2017) (defining leeches as carnivorous or bloodsucking worms).

28

or your life experience, let us know so that we can ask that question"); Wilson v. State, 608 So. 2d 842, 843 (Fla. 3d DCA 1992) (finding juror concealed material information by not responding to question "whether [she] could be impartial" when she had "ill feelings against the State Attorney's Office").  Due process required Juror Taylor to reveal his contemptuous opinions of Appellants, so parties could assess his fitness for service as an impartial factfinder and protect the integrity of the trial.  Whether Juror Taylor's concealment was intentional or not, the process required him to give full and frank answers.  Roberts, 814 So. 2d at 343 (noting that "a juror's nondisclosure need not be intentional to constitute concealment"). For these reasons, I cannot agree with my colleagues' conclusion that Juror Taylor didn't conceal anything.

Second, I see no support for the trial court's finding that Juror Taylor's nondisclosure was Appellants' fault, attributable to their lack of diligence. Appellants asked the right question.  Question 32 asked for Juror Taylor's "opinion . . . of cigarette companies."  In responding, Juror Taylor had an obligation to disclose his material, negative opinion about cigarette companies.  Again, the trial court is incorrect that Appellants' questions needed to specifically ask for "negative feelings" about tobacco companies or ask "[m]ore specific follow-up questions."  Only a single clear question needed to be asked to require truthful and complete responses from Juror Taylor and the 100+ other members of the venire in

29

this case (Juror Taylor was panel member #99), not repeated questions or magic words. See Villalobos v. State, 143 So. 3d 1042, 1047 n.6 (Fla. 3d DCA 2014) (due diligence doesn't require further inquiry after a clear question is asked); Dery v. State, 68 So. 3d 252, 255 (Fla. 2d DCA 2010) (finding no obligation to inquire further after a question is squarely asked). Question 32's straightforward request for an "opinion, if any, of cigarette companies" was perfectly adequate to obtain Juror Taylor's full and truthful opinion of cigarette companies (just as his fellow venire members disclosed).

And so, I would reverse because the trial court's conclusions regarding concealment and diligence aren't supported by the record. Decisions based upon findings unsupported by competent, substantial evidence constitute an abuse of discretion. See, e.g., Russenberger v. Russenberger, 654 So. 2d 207, 217 (Fla. 1st DCA 1995). Juror Taylor concealed his views of Appellants, casting reasonable doubt about his ability to be fair and impartial. He should have been dismissed and the alternate juror empaneled, even if the trial court considered the issue a close call. See Nicholas, 47 So. 3d at 304 ("it is appropriate to remove a juror who has been less than candid during voir dire"); Bell v. Greissman, 902 So. 2d 846, 847 (Fla. 4th DCA 2005) (close cases involving challenges to the impartiality of potential jurors should be resolved in favor of excusing the juror rather than leaving doubt as to impartiality).

III.

Because Appellants were denied a proper jury, I would quash the final judgment and remand for a new trial.